POWER, SECRETARY OF STATE, *v.* RATLIFF ET AL. SAME *v.* CADE.

[72 South. 864.]

1. INJUNCTION. *Right to injunction. Persons entitled. Irreparable injury. Enjoining elections.*

The general rule is that an injunction will not lie to restrain the holding of an election, but there may be elections authorizing bond issues or directly affecting property rights, and if such an election is attempted to be held without authority of law, equity might well interfere.

2. INJUNCTION. *Right to injunction. Persons entitled.*

Where tax payers objected to the submission of a legislative act to referendum vote on the ground that the constitutional amendment appearing in Laws 1914, chapter 520, providing for initiative and referendum was invalid, they do not suffer an irreparable injury entitling them to an injunction where the question is to be shortly submitted at a general election and the expense will be slight.

3. INJUNCTION. *Right to injunction. Irreparable injury.*

A game warden appointed under Laws 1916, chapter 99, cannot secure an order enjoining submission of the act to a referendum vote on the theory that he is entitled to the emoluments of his office and that a referendum of the act to the voters would work irreparable injury and on the theory that the constitutional amendment found in Laws 1914, chapter 520, providing for initiative and referendum was void for the law might be upheld by the voters, and if repealed the warden could then call in question the right of the people to nullify the act.

4. INJUNCTONS. *Enjoining elections.*

Though the constitutional amendment found in Laws 1916, chapter 520, providing for initiative and referendum be void, a referendum election cannot be enjoined on the theory that if legislation be repealed, the repeal will be invalid, but the proper procedure is to take appropriate action to prevent the execution of any proposition voted upon, since the question of the validity of legislation is not one for the courts until the legislation is completed and until then the courts cannot determine whether the proper forms have been pursued.

5. SAME.

Not only should equity refrain from interfering with the preliminary steps in the holding of an election on purely political matters, but should also refrain from interfering with the free exercise of the legislative functions of government whether attempted to be exercised by the legislators or by the people in their sovereign capacity.

APPEAL from the chancery court of Hinds county.
HON. O. B. TAYLOR, Chancellor.

Bill by W. T. Ratliff and another against Joseph W. Power, secretary of state, consolidated with a bill by J. M. Cade against the same defendant. From an order denying dissolution of a temporary injunction granted complainants, defendant appeals.

W. T. Ratliff and J. M. Sullivan, citizens of Hinds county and taxpayers of the state, appellees in one of the above-styled causes, prayed for and obtained an injunction against J. W. Powers, secretary of state, restraining him from acting upon certain petitions filed by certain electors of the state seeking to have approved by

vote of the people certain acts of the legislature known as House Bill No. 264, and House Bill No. 255, the first being an act to promote temperance, to restrict the consumption of intoxicating liquors in this state, to prevent shipments and the delivery thereof in the state, to restrict the quantity of liquor that may be received or possessed, and otherwise provide for state-wide prohibition in Mississippi; the other act being an act to promote temperance and to suppress the evils of intemperance, and to prevent liquor advertisements and the circulation of price lists, order blanks, and other matter for the purpose of inducing or securing orders for liquor, bitters, and drinks in this state. A separate and similar bill of complaint was filed by J. M. Cade, appellee herein in the other of the above-styled causes, and both cases were by agreement argued and submitted together. Without setting out the allegations of the bills of complaint in detail, it is claimed that House Concurrent Resolution No. 24, appearing as chapter 520 of the Laws of 1914, styled "A concurrent resolution proposing an amendment to section 33 of the Constitution of Mississippi providing for initiative and referendum," and inserted in the Constitution by the legislature of 1916 as Senate Concurrent Resolution No. 18, styled "A concurrent resolution to insert in the Constitution of the state of Mississippi an amendment providing for initiative and referendum," was not legally submitted and was not legally adopted as a part of the Constitution for various reasons alleged in the bill, one of which is the averment that the said amendment did not receive the necessary majority of the qualified electors voting at the general election on November 3, 1914; that the said amendment is now no part of the Constitution, and that the people of the state have no right to have referred for their approval any statute passed by the legislature; that the petitions of the electors seek to have referred to a vote of the people the liquor laws passed by the legislature of 1914, and in the bill presented by Mr. Cade, the act passed by the

legislature of 1916, chapter 99, for the conservation and protection of game and fish, providing for the department of game and fish, for the appointment of game wardens, and otherwise regulating hunting and killing of game in the state; that the secretary of state, unless restrained, will proceed unlawfully to have referred to a vote of the people the several acts of the legislature mentioned, and in doing so will incur needless and unnecessary expense, and the holding of such illegal referendum will inflict an irreparable injury upon the complainants and arouse the enmity and passions of the qualified electors of the state arrayed upon the one side or the other of the questions so presented at the election. Complainants W. T. Ratliff and J. M. Sullivan seek to maintain their joint bill as taxpayers. Mr. Cade, in addition to the claim of being a taxpayer, avers that he is the game and fish warden for Hinds county, and as such is entitled to the office and the emoluments thereof without interruption. The bills of complaint were duly answered by appellant, proof taken, and the causes submitted to the chancellor upon the pleadings, proof, and motion to dissolve the temporary injunction issued. The chancellor overruled the motion to dissolve and granted an appeal to the supreme court to settle the principles of the case. The record shows that in pursuance of the initiative and referendum amendment to the Constitution the maximum number of qualified electors petitioned for a reference of the several acts mentioned to a vote of the people; that the petitions were received and filed by the secretary of state, and this official was preparing to have a referendum on the several acts at the general election to be held on the 5th day of November of the present year when he was restrained from further action by the temporary injunction which the chancellor granted and which he declined to dissolve upon motion.

*Lamar F. Easterling,* Assistant Attorney-General, for appellant.

*W. C. Wells, W. M. Hemingway, W. E. Morse, W. T. Ratliff* and *L. Brame,* for appellee.

STEVENS, J. delivered the opinion of the court.

(After stating the facts as above). Lying upon the threshold of this case is the question whether equity has jurisdiction to enjoin the secretary of state from taking the steps necessary to refer the several acts of the legislature to an election by the people. While the answer denies that complainants have the right to the injunction prayed for and granted, this particular question was not stressed by counsel in the arguments before us, and we might, therefore, well preface our remarks in the language of the Oklahoma court in *McAlester* v. *Milwee:*

"They (counsel) are so anxious to have this court pass upon the case upon its merits that they do not wish to urge that question (jurisdiction) in this court. The court does not take that view of the matter; we think it is time enough to pass upon such important questions when they are reached in due course, with proper parties, in a proper proceeding." 31 Okl. 620, 122 Pac. 173, 40 L. R. A. (N. S.) 576.

The question of the jurisdiction of equity in this case is so serious that we do not feel justified in waiving or ignoring it. The general rule is that an injunction will not lie to restrain the holding of an election. It is not necessary to say that this rule obtains to the extent that equity will never restrain the holding of an election, for the door of the court is always open to those who seek protection in matters of property and the maintenance of civil rights or who reasonably apprehend the infliction of irreparable injury. There may be elections authorizing bond issues or directly affecting property rights, and if such an election is attempted to be held without authority of law, equity might well interfere. The cases

at bar, however, do not fall in that class. The complainants in the instant cases have obtained an injunction restraining the secretary of state from performing official duties imposed upon him by a proposed amendment inserted by the last legislature as a part of our Constitution, and thereby indirectly restraining this official from taking the necessary steps to refer the liquor laws and the game law to a vote of the people in accordance with the provisions of this initiative and referendum amendment. The very object of the suits is to prevent the holding of an election on these questions. The only property rights which complainants in one of the suits have is their interest as taxpayers. The referendum called for by the amendment sought to be held void submits for the approval of the people the laws petitioned against, and the amendment expressly provides that this approval or rejection must be registered "at the general state or congressional elections, except when the legislature shall order a special election." At the time the injunction was served these questions were being prepared for submission at the general November, 1916, election. If submitted, the questions so presented will not require the holding of an additional election, but will simply lengthen the ticket to be voted on at the regular election of this year. If appellant submits the questions to a vote of the people, the additional burden of taxation upon complainants will be the paltry sum of a few cents, an injury trifling and insignificant. The injury in no wise could be called irreparable within the sense of that term as employed in equity jurisprudence. Complainants Ratliff and Sullivan do not seek the protection of property rights. They would likely resent the imputation that they have any interest in liquors or any newspapers profiting by liquor advertisements, and even though a complainant might have an alleged interest in the sale of liquors or the operation of a newspaper within the confines of our state, a vote upon the liquor laws enacted by the legislature of

1916 might possibly help but could never hurt such complainant in the enjoyment of any such rights. It is conceded that the liquor laws in question are valid enactments of our legislature, and it must be remembered that complainants do not seek to prevent the enforcement of an illegal or unconstitutional act of the legislature. While the bills purport to enjoin the secretary of state in the performance of his ministerial duties, the gravamen of the bill after all is an injunction against the exercise by the people of a veto power upon the legislation in question. It cannot possibly hurt any one for the people to register their choice or will on these liquor laws. If the people approve the laws no injury has been inflicted upon any one, and the statutes in question remain valid and subsisting laws of our commonwealth. The liberty of property rights of no one will be affected.

With reference to the so-called game and fish law, Mr. Cade claims a right to enjoy the emoluments of his office as fish and game warden of Hinds county without the interruption of an election. What is said about the rights of Ratliff and Sullivan as taxpayers applies with equal force to the rights of Mr. Cade as a taxpayer. In addition, however, he claims the right to have the court protect him in his office. The game law in question is conceded to be a valid enactment of the legislature, and if the people by referendum vote approve the law, no injury is inflicted upon Mr. Cade or any one else. He will still continue to be the game warden of Hinds county. If the people reject or disapprove the law, then the rights of the people to nullify this act of the legislature can and will be called in question. If the initiative and referendum amendment is void and no part of our present Constitution, the vote of the people upon the game law will have no legal effect upon its validity, and Mr. Cade will still be the lawful game and fish warden of Hinds county, and as such entitled to the office and the emoluments thereof. This complainant, therefore, has not shown that irreparable injury will be done him

by submission of this question to a vote of the people.
The injury threatened must be substantial and not
fanciful or theoretical.

Counsel for appellees rely upon the case of *Conner* v.
*Gray,* 88 Miss. 489, 41 So. 186, 9 Ann. Cas. 120, which was
a suit instituted by certain citizens and taxpayers to re-
strain the holding of an election for the creation of a new
county. There are some general expressions in this
opinion sustaining the jurisdiction of chancery to enjoin
an electon called in violation of the Constitution and laws
of the state, and these general expressions of the court
support the argument of counsel for the complainants
in the instant cases. We have examined the issues and
the opinion of the court in this case of *Conner* v. *Gray,*
and with the highest regard for the learning and ability
of the judge delivering the opinion of the court in that
case, we are forced to the conclusion that the statements
of the court in that case upon the jurisdiction of equity
are too general and far-reaching. It must be observed,
however, that the court in the Conner-Gray Case declined
the relief sought and dismissed the bill, and the decree of
the lower court was affirmed. The court reached the
right result in that case, and found, as a matter of fact,
and so held that:

"The taxpayer has utterly failed to prove himself with-
in the provision of the law as stated in *Gibbs* v. *Green,*
54 Miss. 592, in that he has failed to show, not only 'that
the act about to be performed is unconstitutional,' but
also failed to show that he will be injured in any way."

In addition to the alleged rights of the complainants
as taxpayers a justice of the peace and certain members
of the board of supervisors complained in that case of
the attempt to create a new county upon the ground that
they would be taken out of their county and jurisdiction
and placed in a different county, and in response to the
contention of these officers the court says:

"Neither the members of the board of supervisors, nor
the justice of the peace, have any right to complain of the

exercise by the legislature of its constitutional power in the creation of a county until they become directly affected by it. They cannot maintain this bill simply because they fear some invasion may be made upon their rights as officers.''

The pronouncements of the court in that case with reference to the interest of the complainants as taxpayers and officers fully accord with the views of the court here expressed as to the irreparable injury threatened complainants in the present cases, and the holding of the court there is really authority for the holding here made.

It will not do to say that the election if held will be void. The proper remedy will be appropriate action to prevent the execution of any proposition voted for. *Thompson* v. *Mahoney,* 136 Ill. App. 403. In this case the court observes that:

''The attempt to check the free expression of opinion, to forbid the peaceable assemblage of the people, to obstruct the freedom of elections, if successful, would result in the overthrow of all liberty regulated by law. The mere effort to assume such power is dangerous to the rights of the citizens. . . . The principle which would authorize the mighty mandate of a court of chancery in this case would justify it in every election to be held by the people, and thus the whole administration of the government might be obstructed and all power and authority placed at the footstool of the judge.''

The practice contended for in the present cases would tend too much to government by injunction. It is time enough to elicit an expression of the court as to the validity of a law or constitutional amendment when the substantial rights of litigants have been invaded. It is well settled that courts cannot interfere with the legislature in the enactment of a void statute or with a municipal corporation in the mere enactment of a void ordinance. The legislature and the people of our state have undertaken to amend the Constitution in a way to confer the right upon the people to enact or reject a law by the so-

called initiative and referendum. This amendment the legislature has inserted as a part of the organic law of our state. Whether they have succeeded or not is a question not now before this court. It is sufficient to say that the qualified electors are now undertaking to act in pursuance of this authority, and in attempting to have the laws in question referred to their vote they are at least attempting the performance of a legislative act, and the courts have no more right to interfere with this legislative act of the people than they have to prevent an abortive attempt of the legislature to pass a law. The making of the laws belongs to a co-ordinate branch of the government, and the courts have nothing to do with the making, but must deal altogether with the finished product. The complainants in the present proceeding are seeking an advance opinion as to the validity of a constitutional amendment before that amendment has been enforced in a way to effect the substantial property rights of any one. There is no law authorizing a bill of complaint to remove an alleged cloud on or uncertainty about a statute or constitutional amendment before the same has been put into force and effect in a way to injure the parties complaining.

The recent case of *McAlester* v. *Milwee, supra,* sustains our view of the jurisdictional question. In that case the taxpayer attempted to enjoin the holding of an election to recall the mayor of the city. The court in that case says:

"Courts of equity are only conversant with matters of property and the maintenance of civil rights, and will not interfere to enforce or protect purely political rights. This doctrine has been universally applied in other jurisdictions where equity has been invoked to interfere in matters preceeding an election."

In addition to the authorties relied upon by the Oklahoma court other authorities are listed in a note to this case as reported in 40 L. R. A. (N. S.) 576.

In the case of *State ex rel. Cranmer* v. *Thorston,* 9 S.
D. 149, 68 N. W. 202, 33 L. R. A. 582, an elector and tax-
payer attempted to enjoin the submission to a vote of the
people of a constitutional amendment upon the grounds
that the submission would be invalid and without author-
ity of law. It was contended in that case that the legis-
lature had not legally passed the resolution submitting
the amendment to the qualified electors of the state, and
that the election if held would be a nullity. The court
in a lucid and sensible opinion, among other things, says:

"If the legislature has proceeded properly and its
proposed amendment shall be ratified by the people, the
relator will have no legal cause of complaint, because, as
a good citizen of the state, he will be bound to cheerfully
accept the lawfully expressed will of a majority of its
soverign electors. If, on the other hand, the action of the
legislature was such as to render any answer to the
question inoperative, the Constitution will not be modi-
fied, and no one will be affected. Any additional burden
which might result to relator, as a taxpayer, by reason of
submitting this question at a general election, is too tri-
fling, fanciful, and speculative for serious consideration;
and if, as claimed by him, the legislature has done
nothing but submit a question to the people, it has done
what it had a right to do, and any additional expense
resulting from such action will be a legitimate expendi-
ture of public money. Evidently an essential ground of
equitable jurisdiction is wanting."

A similar attempt to prevent the submission of a con-
stitutional amendment to a vote of the people was made
in the case of *People ex rel. O'Reilly* v. *Mills, Secretary
of State,* 30 Colo. 262, 70 Pac. 322, wherein the court
observes:

"The judicial department can no more interfere with
such legislation or the successive steps necessary to be
taken to amend the Constitution than it can with the gen-
eral assembly in the passage of other laws, because the
judicial cannot directly interfere with the functions of the

legislative department. . . . When laws have been
passed no doubt in a proper case the inquiry can then be
made as to whether or not the requirements of the funda-
mental law in their passage or in their provisions have
been observed, but in the first instance the body to which
has been delegated the power to pass laws must be left
untrammeled, to act in such matters as its wisdom may
dictate.''

It is stated by Mr. Dodd in his work on the Revision
and Amendment of State Constitutions, p. 232, that:

''In Oregon, for example, a measure may be initiated
by the people or by the legislature and then submitted to
the people for approval. The submission of laws for
popular approval in Oregon and in several other states
makes such a popular vote an integral step in the process
of ordinary lgislature. But the courts at present decline
to interfere with the process of legislation, and wait un-
til the validity of a law is attacked before them.''

Another case of interest in this question is that of
*Duggan v. City of Emporia,* 84 Kan. 429, 114 Pac. 235,
Ann. Cas. 1912A, 719, wherein complainants attempted to
enjoin the calling and holding of an election under the
initiative and referendum act of that state as applied to
cities of the second class. The court declined to issue the
temporary injunction, and in affirming the case the su-
preme court of that state, through PORTER, J., says:

''Another reason why the contentions of the appellant
cannot be sustained, if it were conceded that he could
maintain the action in his capacity as taxpayer, is that
it does not appear that he will suffer any injuries as a
consequence of the holding of the election. Acts which,
though irregular and unauthorized, can have no injurious
results constitute no grounds for equitable relief by in-
junction. 1 High. Inj. (4th Ed.), par. 9, and cases cited;
*Hutchinson v. Delano,* 46 Kan. 345, 26 Pac. 740; *Coffey-
ville Min., etc., Co. v. Citizens' Natural Gas, etc., Co.,*
55 Kan. 173, 40 Pac. 326; *Hurd v. Atchison, etc., R. Co.,*
73 Kan. 83, 84 Pac. 553.

"If the result of the election is in favor of the proposed ordinances the statute (Laws 1909, ch. 82, par. 31; Gen. St. 1909, par. 1503) provides that they shall thereupon become binding and valid ordinances of the city; but when they are sought to be enforced, if any person's rights are affected thereby the courts are open for him to test the legality of the ordinances, as well as of the election by which they were adopted.

"One of the grounds urged for the injunction is that the ordinances are unconstitutional because of some defect in their title, but this gives a court of equity no jurisdiction to enjoin the passage of an ordinance. No one would claim that the legislature could be enjoined from the enactment of an unconstitutional law or that the electors could be enjoined from attempting in an unwarranted manner to amend the Constitution. It is a familiar principle that injunction will not lie to prevent legislative action by a municipal corporation. *New Orleans Waterworks Co.* v. *New Orleans,* 164 U. S. 471, 17 S. Ct. 161, 41 L. Ed. 518; *Cape May, etc., R. Co.* v. *Cape May,* 35 N. J. Eq. 419; *State* v. *Superior Ct.,* 105 Wis. 651, 81 N. W. 1046, 48 L. R. A. 819. . . .

"That this is an attempt to enjoin legislative action is apparent. The initiative and referendum statute provides that upon the presentation of a petition in proper form, duly certified by the city clerk, the mayor and council or mayor and commissioners shall do one of two things: Pass the proposed ordinance within ten days thereafter or call an election and submit the ordinance to the people; and upon its adoption by a majority of the electors it becomes a valid ordinance. This is legislation, either direct by the city or indirect by the people. . . .

"The futility of the proceedings to enjoin the submission of the proposed ordinances is likewise obvious when we reflect that the people may not adopt them, and the court ought not to be called upon to anticipate conditions which may never arise."

The same thought is reflected and approved in the statement appearing on page 1011, vol. 9 R. C. L.:

"It will rarely happen that a court can say in advance that irremediable wrong will result to individual electors from the result of an illegal election; and, moreover, there is ordinarily an adequate legal remedy afforded for testing the validity of the election after it has been held."

As stated by the Louisiana court in *Harrison et al.* v. *City of New Orleans et al.*, 33 La. Ann. 222, 39 Am. Rep. 272, in commenting upon an application to enjoin the mayor and administrators of the city of New Orleans and the common council from voting on or passing an alleged illegal ordinance:

"The mere voting on or passing the ordinance in question cannot *per se* do the plaintiff any possible injury. It will be time enough to complain, if it be a subject for complaint, when steps are taken, or a beginning made, to put the ordinance into actual execution."

A similar question came before the court of Illinois in *Fletcher* v. *Tuttle*, 151 Ill. 41, 37 N. E. 683, 25 L. R. A. 143, 42 Am. St. Rep. 220, a case which was begun by a bill in chancery praying that a certain act of the general assembly apportioning the state of Illinois into senatorial districts be declared unconstitutional and void, and to restrain the county clerk of one of the counties from issuing or causing to be posted notices of the election for representatives from the Eighteenth senatorial district. The court at the conclusion of a lengthy opinion says:

"Indeed, it is so well settled that courts will not enjoin the holding of an election that, in drafting the bills, the pleaders did not venture to pray for that species of relief. Furthermore, as is of course well known, the election to be held in November, 1894, will not be confined to the choice of senators and representatives in the general assembly, but it will be for the election of state treasurer, members of Congress, and certain county officers; and it is not pretended that, so far as those of-

ficers are concerned, the election will be in any respect illegal or unauthorized. Nor is it shown, at least by any clear or intelligible averment, that voting for senators and representatives in the general assembly in and for the districts created by the apportionment acts in question, will in any material degree increase the expense of holding the election. In no view, then, can it be held that the complainants, as taxpayers, have made out a case for an injunction to restrain the public authorities from doing acts whereby an illegal indebtedness will be incurred.''

Counsel for appellees rely upon the case of *Crawford* v. *Gilchrist,* 64 Fla. 41, 59 So. 963, Ann. Cas. 1914B, 916. The majority opinion in that case appears to sustain the jurisdiction of the court, but the dissenting opinion of COCKRELL, J. concurred in by Justice SHACKLEFORD, seems to express the safer view. It might be observed also that the suit in that case was by the governor of the state in his official capacity as well as a taxpayer, and the court may have been influenced by the thought that the governor should be accorded the right to prosecute this suit for and on behalf of all the people that might be affected by the constitutional amendment there attempted to be submitted to a vote of the people. This is reflected by the statement of WHITFIELD, C. J., in the majority opinion that:

''In view of the great importance of this matter to the people of the state, this court has permitted the merits of the cause to be fully argued at the bar for both parties on the application for a supersedeas.''

Judge COCKRELL, in his dissenting opinion, well observes that:

''Should . . . the people adopt the amendment, the courts would then be open to any one upon a showing that he was injuriously affected thereby, and then, and not until then, in my opinion, should the courts interpose their views.''

A safe rule was announced by Judge TERRAL in *Gibbs* v. *McIntosh,* 78 Miss. 648, 29 So. 465, that:

"It is not the policy of this state to have elections, and other political matters of government reserved to legislative discretion, interfered with by the judges and officers of the judicial department of the government."

The right of an elector to enjoin an election upon the ground that the act under which the election was attempted to be held was unconstitutional was denied in *Jones* v. *Black,* 48 Ala. 540.

We are fully conscious of the great importance and far-reaching effect of the serious questions so well argued at the bar in the present cases, and the commendable desire to facilitate an early adjudication upon the serious questions presented by these suits may have had much weight in inducing the learned chancellor to grant the temporary writ of injunction in this case. We prefer, however, to adhere to the safer policy that not only should equity refrain from interfering with the preliminary steps in the holding of an election on purely political matters, but should also refrain from interfering with the free exercise of the legislative functions of government whether attempted to be exercised by the legislature or by the people in their sovereign capacity. In declining to assume jurisdiction it necessarily follows that we intimate no opinion whatever upon the merits of the important questions attempted herein to be submitted for our decision.

Let the decree of the chancellor refusing to dissolve the temporary injunction be reversed, the injunction dissolved, and the cause remanded, with direction to dismiss the bills.

*Reversed and remanded.*

SYKES, J. (dissenting). I regret very much that I am unable to agree with the majority of the court in its opinion in this case; but I have such convictions to the contrary that I am forced to this dissent. In my opin-

·ion, the court has jurisdiction of. both these cases and should decide them upon their merits. I think this is especially so because of the great importance of the public question herein involved.

The complainants in both these cases had the right to maintain these suits. This question, in my opinion, is sustained by the better reasoned authorities; a very late case being that of *Crawford, Secretary of State,* v. *Gilchrist, Governor,* 64 Fla. 41, 59 So. 963, Ann. Cas. 1914B, 916. Attention is also called to the other authorities, sustaining this proposition, cited in the briefs of counsel for appellees.

The chancery court had the power to grant the injunction, for the alleged constitutional amendment is void and unconstitutional; and this fact appears from a reading of the alleged amendment, or, as it is sometimes expressed, upon the face of the alleged amendment. The supreme court of Mississippi, in the case of *Conner* v. *Gray,* 88 Miss 489, 41 So. 186, 9 Ann. Cas. 120, which is the latest utterance of this court bearing directly upon this proposition, expressly sustains this power in the chancery court, under these circumstances. In my opinion, the authorities cited in this opinion (*Conner* v. *Gray, supra*), and also those cited in the briefs of counsel for appellees, amply sustain and support this rule.

The alleged constitutional amendment is void and unconstitutional, and this fact appears from an examination of the amendment itself. It is violative of section 273 of the Constitution, which provides that if more than one amendment be submitted at one time, then these amendments shall be submitted in such manner and form that the people may vote on each separately. The alleged amendment now under consideration, which was submitted as one amendment to be voted on by the people, contains two separate, different, and distinct amendments, relating to entirely different subjects. One of these amendments gives the people the right to initiate and regulate laws which may be passed, or have been passed, by the

legislature. In fact, the alleged amendment itself only purports to amend section 33 of the Constitution, which relates to the legislative power to enact laws. If this amendment had stopped there, it would not have been unconstitutional and void upon its face, but it goes further and also attempts, in the second place and in the same amendment, to give the people the right to initiate and enact a constitutional amendment. This second attempted amendment is not an amendment of section 33 of the Constitution, above referred to, but is an amendment of section 273 of the Constitution. In my opinion, there is a vast difference between a law which may be passed by the legislature—which we commonly term a "statutory law"—and a section of the Constitution, or a constitutional amendment. The makers of the Constitution of 1890 expressly provided entirely different schemes for passing statutory laws and constitutional amendments. This Constitution gave the legislature the power to pass statutory laws. At the same time, it vested only a very limited power in the legislature with reference to an amendment to the Constitution, viz., giving it the power to submit to the people a proposed constitutional amendment, after it had been voted on a certain number of times in each house of the legislature and had received upon each vote a certain proportion thereof. After thus passing the legislature, this proposed amendment had to be voted on by the people and receive a majority of all the votes cast in that election, and then it could not become a part of the organic law of the land until another legislature had passed upon these returns and inserted it by proper enactments into the Constitution.

This was a most wise provision of the makers of this great Constitution; the object and purpose being to protect the Constitution from the passing fads and fancies that oftentimes sweep over the country, and to preserve to the people, free from these fads and fancies, their organic law. It was by this Constitution expressly made exceedingly difficult to enact a constitutional amendment.

The alleged constitutional amendment under consideration makes it just as easy to enact a constitutional amendment as it does a statutory law.

. The case of *State* v. *Jones,* 106 Miss. 522, 64 So. 241, and the authorities cited in the opinion of the court, sustain the view that these two amendments should have been separately submitted to the people.

In conclusion, I wish to briefly summarize my views of this case, and they are: First, that the chancery court had jurisdiction of these cases, and that this court should now decide them upon their merits; second, that the alleged constitutional amendment is void and unconstitutional, as appears from a reading of the alleged amendment, because it submits two separate amendments in one; and for these reasons I think the decree of the lower court, in both cases, enjoining the calling of the election, should be affirmed, and the injunctions made perpetual.