MILLS, Justice,
for the Court:
¶ 1. On Court’s own motion, the prior opinions issued in this case are withdrawn, and these opinions are substituted therefor.

STATEMENT OF THE CASE

¶ 2. This is an appeal from the Circuit Court of the First Judicial District of Hinds County, Mississippi declaring Proposed Initiative Measure No. 20 (Measure No. 20) null and void. On May 7,1999, the circuit court entered judgment determining that Measure No. 20 is unconstitutional because it impermissibly attempts to prohibit rights granted to the people of the State of Mississippi under the Bill of Rights of the Mississippi Constitution and fails to include a government revenue impact statement as required by Section 273 of the Mississippi Constitution. Additionally, it found that the doctrines of res judicata and collateral estoppel barred any further legal claims by the measure’s sponsor since two prior measures involving the same subject matter have already been litigated. Aggrieved by the judgment of the circuit court, the sponsor of Measure No. 20, Elizabeth Stoner (Stoner), appeals to this Court assigning two points of error:
1) Whether courts have jurisdiction over the merits of a proposed initiative to amend the Mississippi Constitution?
2) Whether the plaintiffs had standing to bring an action for declaratory judgment and other relief?

STATEMENT OF FACTS

¶ 3. On March 22,1999, Elizabeth Stoner filed with the Secretary of State a proposed initiative measure to prohibit gambling within the state, except gambling sponsored by religious, educational or wildlife organizations. As required by Miss.Code Ann. § 23-17-5 (Supp.1999), the Secretary of State delivered the proposal to the Attorney General. The Attorney General reviewed the measure for form and style and issued a certificate of review pursuant to section 23-17-7 (Supp. 1999). The Secretary of State subsequently assigned a serial number to the proposal. Initiative Measure No. 20 was born.
¶ 4. Thereafter, the Attorney General drafted a ballot title and summary for Measure No. 20, as required by section 23-17-9 (Supp .1999), and sent it to the Secretary of State. The Secretary of State timely published the ballot title and summary pursuant to section 23-17-11 (Supp. 1999). Subsequently, Robert Mahoney, Odean Reed, Sherwood R. Bailey, Jr., Chevis C. Swetman, Clayton Henderson, Ernest J. Stebbins, Mississippi Gaming Association, Inc., Eric Clark, Secretary of State of the State of Mississippi and Michael C. Moore, Attorney General of the State of Mississippi (collectively “appel-lees”), filed their consolidated petition and complaint asking the circuit court to review and set aside Measure No. 20, alleging that the measure violates Section 273(4)-(5) of the Mississippi Constitution and its statutory equivalent, Section 23-17-1(3)(4) (Supp.1999). These sections provide, in summary, (1) that if a proposed initiative requires a reduction in any source of government revenue the sponsor must include in the text of the initiative the programs whose funding will be affected and (2) that the initiative process shall not be used to modify or repeal any por *399 tion of the Bill of Rights of the Mississippi Constitution.
¶ 5. Initiative Measure No. 20 proposes to amend the State Constitution to prohibit all forms of gambling within the State of Mississippi except for “activities regulated under educational, wildlife conservation or religious organizations...The proposed measure provides that affected gaming establishments are subject to a “two year amortization period, at the conclusion of which all non-exempt ... gaming ... conducted in this State shall cease.” This proposed initiative is Stoner’s third attempt to exercise her right to propose a constitutional amendment making certain forms of gaming illegal in the State of Mississippi. The first two were Initiative Measures No. 12 and 13, filed on June 12, 1998 and July 10,1998, respectively.
¶ 6. The appellees in this case also previously filed suit to have Initiative Measure No. 12 set aside, naming the State Attorney General, the Secretary of State, and Stoner as respondents to the petition and the Secretary of State and Stoner as defendants to the complaint. The Circuit Court of the First Judicial District of Hinds County ruled in 1998 that Initiative Measure No. 12 was unconstitutional because it violated the state Constitution’s Bill of Rights and failed to include a government revenue impact statement as required by section 273(4) of the Mississippi Constitution and Miss.Code Ann. § 23-11-1(3) (Supp.1999). As a result, the circuit court found Measure No. 12 to be legally insufficient; rendered it null and void; and declared that the ballot title and summary could not be finally established.
¶ 7. Stoner collaterally attacked the circuit court’s order disposing of Measure No. 12 by fifing an emergency petition for writ of mandamus in this Court. Stoner argued that the circuit court had no jurisdiction to enter a ruling addressing the content or subject matter of her proposed measure and that the appellees lacked standing. We dismissed the petition, holding that the circuit court’s order was a final judgment under Miss.Code Ann. § 11-51-3 (Supp.1999) and that, therefore, “the proper mode of review ... is by way of direct appeal, and not by writ of mandamus.” In re Stoner, No.1998-M-00945 (Miss. Oct. 14, 1998) Stoner did not take a direct appeal from the circuit court’s July 24,1998, order.
¶ 8. On July 10, 1998, Stoner filed her second anti-gaming initiative, subsequently designated Initiative Measure No. 13. Ap-pellees again timely filed their suit to have Measure No. 13 set aside. The circuit court found that Measure No. 13 shared the constitutional infirmities of Measure No. 12; i.e., it impermissibly attempted to amend the state constitution’s Bill of Rights and failed to include a governmental revenue impact statement. Further, the circuit court held that the doctrines of res judicata and collateral estoppel precluded Stoner from refitigating the same issues addressed by the circuit court’s first order because Measure No. 13 was nearly identical to Measure No. 12.
¶ 9. Stoner did not appeal the circuit court’s second order but instead filed her third anti-gaming proposal, dated March 22, 1999. As noted, this proposal was designated as Initiative Measure No. 20. This measure suffered the same fate as the previous two. Appellees filed suit to have Measure No. 20 set aside, and Stoner answered citing lack of jurisdiction and lack of standing. The circuit court again held that the anti-gaming initiative impermissi-bly attempted to amend the Bill of Rights and failed to include a government revenue impact statement. (The court below failed to identify which part of the Bill of Rights was being impermissibly amended. We see no impingement. Accordingly, the circuit court’s ruling in that regard will be treated as mere surplusage affecting neither Stoner’s assignments of error nor ap-pellees’ rights on appeal.). Additionally, the circuit court held that the doctrines of res judicata and collateral estoppel precluded Stoner from refitigating the issues based on the two previous judgments set *400 ting aside Stoner’s two prior anti-gaming measures. From the order dated May 6, 1999, Stoner appeals to this Court.

ANALYSIS

¶ 10. The Mississippi Constitution places certain guidelines and limitations upon the use of the initiative process. Article 15, Section 273(3) reads:
The people reserve unto themselves the power to propose and enact constitutional amendments by initiative. An initiative to amend the Constitution may be proposed by a petition signed over a twelve-month period by qualified electors equal in number to at least twelve percent (12%) of the votes for all candidates for Governor in the last gubernatorial election. The signatures of the qualified electors from any congressional district shall not exceed one-fifth ( ⅜) of the total number of signatures required to qualify an initiative petition for placement upon the ballot. If an initiative petition contains signatures from a single congressional district which exceed one-fifth (½) of the total number of required signatures, the excess number of signatures from that congressional district shall not be considered by the Secretary of State in determining whether the petition qualifies for placement on the ballot.
Miss. Const, art. 15, § 273(3).
¶ 11. A sponsor of an initiative must also disclose certain budget information as set forth in section 273(4) of the state Constitution:
The sponsor of an initiative shall identify in the text of the initiative the amount and source of revenue required to implement the initiative. If the initiative requires a reduction in any source of government revenue, or a reallocation of funding from currently funded programs, the sponsor shall identify in the text of the initiative the program or programs whose funding must be reduced or eliminated to implement the initiative. Compliance with this requirement shall not be a violation of the subject matter requirements of this section of the Constitution.
Miss. Const, art. 15, § 273(4), codified in Miss.Code Ann. § 23-17-l(3)(4).
¶ 12. We must determine whether these constitutional provisions have been satisfied here.
1) Whether courts have jurisdiction over the merits of a proposed initiative to amend the Constitution?
¶ 13. Whether the circuit court had jurisdiction to hear a particular matter is a question of law. We must therefore apply a de novo standard of review to this issue. Wright v. White, 693 So.2d 898, 900 (Miss.1997).
¶ 14. Stoner contends that the circuit court exceeded its subject matter jurisdiction when it assumed jurisdiction over the appellees’ complaint to have Measure No. 20 set aside. (“Circuit court” means the Circuit Court of the First Judicial District of Hinds County, for this is the circuit court expressly authorized to hear matters regarding the initiative process. See Miss.Code Ann. § 23-17-13 (Supp. 1999)). Stoner contends that section 156 of the state Constitution conferring original jurisdiction in the circuit courts “in all matters civil and criminal in this state not vested by this Constitution in some other court, and such appellate jurisdiction as shall be prescribed by law” does not extend to matters touching the initiative process. Stoner argues that under Mississippi law the phrase “original jurisdiction in all matters civil” is “confined to matters which were of a common law nature, that is, to matters which were known at common law.” Wheeler v. Shoemake, 213 Miss. 374, 400, 57 So.2d 267, 279 (1952).
¶ 15. Apparently, Stoner’s argument hinges on the negative inference that since § 23-17-13 refers to the “ballot title and summary,” the circuit court has no jurisdiction over any other matters concerning the initiative process. Therefore, *401 she concludes, the circuit court has no jurisdiction to review a proposed measure’s constitutional compliancy. Of course, this contention flies directly in the face of Section 156⅛ grant of “jurisdiction in all matters civil and criminal in this state not vested by this Constitution in some other court....” Stoner’s contention that our decision in Wheeler should be applied in her favor here is without merit. Wheeler dealt with the Legislature’s power to classify certain criminal matters as noncriminal. Section 28-17-13 deals merely with the legislature’s authority to direct venue, not jurisdiction. The legislature has chosen to direct all matters concerning the initiative process to the Circuit Court of the First Judicial District of Hinds County. The statute merely directs venue, not jurisdiction. Jurisdiction is conferred upon the circuit courts by Section 156. Venue is selected by § 23-17-13. If we were to follow Stoner’s suggestion, we would be left with no place or procedure by which to review the constitutionality of a proposed initiative (i.e., whether it is constitutional on its face or satisfies the conditions and requirements as set forth in section 273 of the Constitution) before the initiative petition is either circulated among the voters for signatures or before it is placed on the ballot for consideration by the people in a general election. Stoner argues that the proper and only time that the courts may review the constitutionality of a proposed initiative is after the electoral die is cast in a general election. In effect, she argues for unbridled ballot box chaos. This argument runs counter to all notions of ballot box efficiency and notice to the electorate.
¶ 16. We hold today that §§ 23-17-1 et seq. do not divest the Circuit Court of the First Judicial District of Hinds County of its jurisdiction as set forth in section 156 of the Constitution. As such, this circuit court is the proper venue and has jurisdiction to review the facial constitutionality of proposed initiatives.
¶ 17. Stoner next suggests that section 23-17-23 illustrates only the purely procedural nature of the entire initiative and referendum scheme and contends that a proposed initiative is not subject to any substantive review by the courts. It is true that proposed initiatives will not be reviewed by this or any other court for their wisdom and merit. Power v. Ratliff, 112 Miss. 88, 72 So. 864 (1916). The voters make those decisions. However, proposed initiatives are subject to review of form and, therefore, content inasmuch as content affects form and form affects content. Simply put, initiatives must meet minimum constitutional and statutory requirements, prior to being placed on the ballot to ensure full disclosure and notice to the electorate.
¶ 18. Section 273(4) of the state Constitution calls for the sponsor of any proposed initiative to include within that initiative a government revenue impact statement. Specifically, section 273 requires that if the implementation of the initiative “requires a reduction in any source of government revenue, the sponsor shall identify in the text of the initiative the program or programs whose funding must be reduced or eliminated .... ” (emphasis added). Miss. Const, art. 15, § 273(4). Section 5 of Initiative Measure No. 20 reads: “This initiative measure requires no reduction in any source of government revenue, nor a reallocation of funding from currently funded programs.” Stoner supports this bold assertion by arguing that the ceasing of all for-profit gaming in the state of Mississippi will “not necessarily require” a reduction in any source of government revenue. Whether or not one supports legal gaming, a fair-minded student of Mississippi government must reach the inarguable conclusion that legalized gaming has become an important generator of tax revenue in the state of Mississippi. Since the inception of for-profit gaming in this state in March of 1993 through February of this year, the total tax revenue generated by for-profit *402 gaming amounts to over $1.3 billion. Mississippi State Tax Commission, Miscellaneous Tax Division, “Mississippi Tax Revenues from Gaming” (July 19, 2000). This money has been used to make much needed improvements in numerous areas of our state including, but certainly not limited to, our highways and schools. Stoner’s assertion that Measure No. 20 would not necessarily adversely affect the tax revenue of this state is patently unreasonable. The government revenue impact statement is a requirement designed to protect the integrity of the constitutional initiative process and to prevent the electors of this state from being presented with false and misleading initiative petitions. The people are entitled to the best, most accurate information available when voting on matters of state. When a sponsor of an initiative asserts that the initiative will have no negative impact on current funding of state programs and chooses to exclude a government revenue impact statement from the text of the initiative, that sponsor must establish a rational basis to support her assertion that no such adverse impact will occur. Initiative Measure No. 20 does not include a government revenue impact statement. Stoner has established no rational basis for her assertion that her proposed measure to eliminate for profit gaming will not necessarily require an adverse impact on government revenue in this state. This constitutional deficiency clearly violates section 273(4) of the state Constitution. The order of the circuit court declaring Measure No. 20 unconstitutional and therefore null and void is affirmed.
2) Whether Plaintiffs/Appellees had standing to bring an action for declaratory judgment other or relief?
¶ 19. Stoner’s second primary contention is that the appellees lacked standing to assert the claims set forth in their complaint. In Power v. Robertson, 130 Miss. 188, 93 So. 769 (1922) this Court specifically addressed the standing issue with respect to the initiative process. Id. We stated:
The initiative proceeding, reserving the legislative power in the people, makes each elector, if the amendment is valid, a part of the legislative machinery, and with rights as such in the enactment and proposal of legislation. The people who oppose the measure in our opinion have equal rights with those who favor the measure. This is a more reasonable construction, as well as a more just one, than it would be to hold that a part of the electorate would be to hold that a part of the electorate would have a right to propose a measure which the other part did not have a right to oppose ... We think, in dealing with the subject, that a distinction must be drawn between elections ordered by law at fixed times and places, or an election ordered by the Legislature without conditions precedent, and those elections that can only be held when certain conditions have come into existence.
Id. at 773.
¶ 20. As qualified electors and taxpayers of the State of Mississippi, the appel-lees in this case had standing to assert their claims questioning the sufficiency of Initiative Measure No. 20. This argument is without merit.

CONCLUSION

¶ 21. Section 273 of the Mississippi Constitution seeks to temper the initiative induced tension between the unchecked will of the majority versus the inherent rights of individuals. The section protects the Bill of Rights and other matters of state interest; seeks to protect the state coffers by requiring rationally based government revenue statements; and seeks to discourage regionalism by requiring broad-based support for any proposed initiative.
¶ 22. Finally, the initiative movement of recent experience, both in Mississippi and other states, has exposed the danger that special interests can easily manipulate and control the initiative process in states lacking responsible procedural guidelines in their initiative laws. Care must be taken *403 to ensure that the rights of individuals, minorities, and separate regions of the state are not easily trampled and ignored by majority impulses. Section 273 provides reasonable checks against such abuses. It is our duty to apply these factors fairly and evenly.
¶ 23. For the foregoing reasons, the judgment of the circuit court finding Initiative Measure No. 20 unconstitutional and therefore null and void is affirmed.
¶ 24. AFFIRMED.
PRATHER, C.J., PITTMAN AND BANKS, P.JJ., McRAE AND WALLER, JJ„ CONCUR. DIAZ, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY BANKS, P.J. AND McRAE, J. COBB, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SMITH, J.