# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-CA-01106-SCT

*LELAND SPEED*

*v.*

*DELBERT HOSEMANN, SECRETARY OF STATE*
*OF MISSISSIPPI AND DAVID WAIDE*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/29/2011 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | LUTHER T. MUNFORD |
| | ROBERT GREGG MAYER |
| | FRED L. BANKS, JR. |
| | RONALD D. FARRIS |
| ATTORNEYS FOR APPELLEES: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: HAROLD EDWARD PIZZETTA, III |
| | SAM E. SCOTT |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | VACATED AND DISMISSED - 09/08/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.     David Waide filed an Initiative[1] with Mississippi Secretary of State Delbert Hosemann, and Hosemann has approved it for placement on the November 2011 general election ballot.

---

[1] The Initiative – now known as Initiative 31 – attempts to restrict the state's power to transfer certain property to certain parties after taking it by eminent domain.

¶2. Leland Speed filed a complaint against Hosemann in the Hinds County Circuit Court, along with a Motion for Expedited Declaratory and Injunctive Relief, asking the court to declare Initiative 31 unconstitutional and to enjoin Hosemann from placing it on the ballot. Speed argued that Initiative 31 "violates Section 273(5)(a) because that section prohibits use of the initiative process for the 'proposal, modification or repeal' of 'any portion' of the Constitution's Bill of Rights." Speed argued that Initiative 31 was a "'proposal, modification or repeal' of the Bill of Rights . . . and more specifically of its Section 17, which governs taking of private property for a public use."

¶3. After Hosemann and Waide[2] responded to Speed's pleadings, Speed filed a Motion for Judgment on the Pleadings, in which he argued that the case "involve[d] a pure issue of law with no material facts in dispute" and asked the court to enter judgment in his favor under Mississippi Rule of Civil Procedure 12(c). The trial judge both denied Speed's motion for judgment on the pleadings and ruled on the merits, finding that Speed's complaint should be dismissed with prejudice and ordering that Hosemann be allowed to proceed in placing Initiative 31 on the ballot.

¶4. On appeal, Speed asks this Court to reverse the trial judge, declare that Initiative 31 violates Section 273(5) of the Mississippi Constitution, and "keep Initiative 31 off the November ballot."

¶5. We find that the issue presented in this appeal, i.e., the constitutionality of *proposed* Initiative 31, is not ripe for adjudication by this Court, such that any opinion thereon would be improperly advisory. Speed filed his complaint only two months ago, and the case already

---

[2] The trial court granted Waide's motion to intervene as a defendant.

2

has arrived on our docket. This case has been rushed through the trial court and efficiently punted to this Court for "expedited review." We find no good reason for the frenetic, fast-paced atmosphere surrounding this case, and we think there is "time enough to pass upon such important questions when they are reached in due course, with proper parties, in a proper proceeding." ***Power v. Ratliff***, 72 So. 864, 865 (Miss. 1916).

¶6. In ***Ratliff***, contestants obtained an injunction against Secretary of State Joseph Power to prevent him from "taking the steps necessary to refer . . . several acts of the Legislature to an election by the people," and Power appealed. ***Id.*** at 865. This Court dissolved the injunction and dismissed the action, noting the general rule that "an injunction will not lie to restrain the holding of an election." ***Id.*** And regarding pre-election review of initiatives specifically, the ***Ratliff*** Court observed that when:

> qualified electors are . . . *attempting the performance of a legislative act, . . . courts have no more right to interfere with this legislative act of the people than they have to prevent an abortive attempt of the Legislature to pass a law*. The making of the laws belongs to a co-ordinate branch of the government, and the *courts have nothing to do with the making, but must deal altogether with the finished product*. The complainants . . . are *seeking an advance opinion as to the validity of a constitutional amendment before that amendment has been enforced in a way to affect the substantial . . . rights of anyone*. There is no law authorizing a bill of complaint to remove an alleged cloud on or uncertainty about a statute or constitutional amendment *before the same has been put into force and effect in a way to injure the parties complaining*.

***Id.*** at 867 (emphasis added). As such, only:

> "[w]hen laws *have been passed* no doubt in a proper case the inquiry can *then* be made as to whether or not the requirements of the fundamental law in their passage or in their provisions have been observed, but in the first instance the body to which has been delegated the power to pass laws must be left untrammeled, to act in such matters as its wisdom may dictate."

3

*Id*. (citation omitted) (emphasis added). So, as the ***Ratliff*** Court concluded, the "safer policy" is to "refrain from interfering with the free exercise of the *legislative functions* of government whether attempted to be exercised by the Legislature *or by the people in their sovereign capacity*." *Id*. at 869 (emphasis added).

¶7. We find this reasoning compelling and see no reason to retreat from it today. As it presently stands, Initiative 31 is proposed legislation put forth for public debate and discourse. It has not been "put into force and effect in a way to injure the parties complaining." *Id.* at 867. We find that general challenges to an initiative's substantive constitutionality, such as the one before us today, are not justiciable before the initiative has been enacted by the electorate.

¶8. Speed relies on this Court's decision in ***In Re Proposed Initiative Measure No. 20***, 774 So. 2d 397 (Miss. 2000), to bring this pre-election action. There, the proponent of a proposed initiative appealed after the circuit court had held that her initiative would not be placed on the ballot. *Id.* at 399-400. The ***Measure 20*** Court agreed that the initiative could not be placed on the ballot, because it did not include an economic impact statement (a defect in form). *Id.* at 402.

¶9. But the ***Measure 20*** Court went on to hold implicitly that *substantive* challenges to proposed initiatives also are proper for pre-election review. *Id.* at 401-02. Citing no constitutional, statutory, or caselaw authority, the ***Measure 20*** Court stated that "proposed initiatives are subject to review of form and, therefore, *content* inasmuch as content affects form and form affects content." *Id.* at 401 (emphasis added). The lack of authority is no surprise, as such authority is nonexistent. In fact, our existing caselaw has held exactly the

4

opposite. According to *Ratliff*, "the courts . . . must deal altogether with the *finished product*." *Ratliff*, 72 So. at 867. While we agree that "minimum constitutional and statutory requirements" must be met before a measure is placed on the ballot, a pre-election review of an initiative is limited to matters of *form*, i.e., the sufficiency of signatures and/or the ballot title or summary.[3] *See* Miss. Const. art. 15, § 273(9); Miss. Code Ann. §§ 23-17-13, -23, -25 (Rev. 2007). For these reasons, and the reasons stated in *Hughes v. Hosemann*, a decision also issued by this Court this date, *Measure 20* is overruled to the extent that it allows pre-election substantive review of proposed initiatives.

¶10. In sum, the present challenge to the substantive validity of Initiative 31 is not ripe for consideration. There is time enough to consider whether the measure, if passed, is substantively invalid. But since the voters of Mississippi may choose to reject this measure, this Court "'ought not . . . be called upon to anticipate conditions which may never arise.'" *Ratliff*, 72 So. at 868 (citation omitted). Thus, we decline today to consider the issues raised in Speed's appeal. But we note, as did the *Ratliff* Court, that "[i]n declining to assume jurisdiction it necessarily follows that we intimate no opinion whatever upon the merits of the important questions attempted herein to be submitted for our decision." *Ratliff*, 72 So. at 869. We therefore vacate the circuit court's judgment, and we dismiss Speed's complaint and this action without prejudice.

¶11. **VACATED AND DISMISSED.**

**WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, CHANDLER AND PIERCE, JJ., CONCUR. CHANDLER, J., SPECIALLY**

---

[3] These matters are not contested in this case.

5

**CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., DICKINSON, P.J., RANDOLPH AND PIERCE, JJ. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, J.**

### CHANDLER, JUSTICE, SPECIALLY CONCURRING:

¶12.    I write separately to clarify that Speed makes a constitutional challenge to the use of the initiative process as the mechanism for enacting proposed Initiative 31. Certainly, our constitution prohibits the use of the initiative process for the proposal, modification, or repeal of a portion of the Bill of Rights. Miss. Const. art. 15, § 273(5). But the Court would have to review the substance of proposed Initiative 31 to determine whether proposed Initiative 31 is a proposal, modification, or repeal of a portion of the Bill of Rights. Principles of justiciability prevent us from undertaking substantive review prior to passage of the proposed initiative. For this reason, I concur with the majority that this case is not ripe for our consideration.

### WALLER, C.J., DICKINSON, P.J., RANDOLPH AND PIERCE, JJ., JOIN THIS OPINION.

### KING, JUSTICE, DISSENTING:

¶13.    With appropriate respect for the majority, I dissent.

¶14.    At the outset, let me say that I, too, share the majority's concern about the seemingly frenetic speed with which this matter has moved through the trial court and landed on the docket of this Court. However, I would be remiss if I did not also question the frenetic speed with which this matter is being handled on this Court's docket. This is particularly true when one views the majority's disposition of this case. While this is doubtlessly a matter of some

6

importance, so too are the many other cases which are placed before the trial court and this Court.

¶15.    The majority, relying on *Power v. Ratliff*, 112 Miss. 88, 72 So. 864 (Miss. 1916), holds that "the present challenge to the substantive validity of the measure is not ripe for consideration." If as the majority finds, this case is not yet ripe for resolution, then it must also follow that the frenetic pace at which this case has been addressed, both by the trial court and this Court, is not warranted. However, I believe that the majority's reliance on *Ratliff* is misplaced.

¶16.    Initiative 31 and *Ratliff* are clearly distinguishable. Initiative 31 concerns a voter-driven initiative. This method of amending the Constitution did not even exist until 1992, well after the *Ratliff* decision. *See* 1992 Miss. Laws 1318-1322. *Ratliff*, on the other hand, addressed whether laws *passed by the Legislature* – specifically laws concerning liquor, hunting, and fishing – could be subject to popular vote. *Ratliff*, 72 So. at 865-66. Also, the proposed measures in *Ratliff* did not seek to propose, modify, or repeal any section of the Bill of Rights. Furthermore, Mississippi Constitution Article 15, Section 273(5) did not exist at that time. *See* 1912 Miss. Laws. 450-51. In other words, "the gravamen of the bill after all is an injunction against the exercise by the people of a veto power upon the legislature in question." *Ratliff*, 72 So. at 866. *Ratliff* did not address the issue before us today.

¶17.    However, *In Re Proposed Initiative Measure No. 20*, 774 So. 2d 397 (Miss. 2000), is an analogous case. *Measure 20* addressed a voter-driven initiative to prohibit gambling within the state, with exceptions. *Id.* at 398. Yes, it is true that the *Measure 20* Court ultimately resolved that case on whether the sponsor of the initiative had failed to provide

7

a government revenue-impact statement. *Id.* at 401-402 (¶¶18-20). But equally true, the *Measure 20* Court also addressed the issue before us today – whether the content of a voter-driven initiative is subject to review. *Id.* at 400-401 ((¶¶13-17).

¶18. The majority dismisses that holding of *Measure 20* as merely dicta. I disagree. Black's Law Dictionary defines "dictum" as "[a] statement, remark, or observation. *Gratis dictum*; a gratuitous or voluntary representation; one which a party is not bound to make. *Simplex dictum*; a mere assertion; an assertion without proof." Black's Law Dictionary 454 (6th ed. 1990). The holding of the *Measure 20* Court fails to come within either definition of dictum. The *Measure 20* Court specifically held that courts have jurisdiction to review the constitutionality of a proposed measure before it is placed on the ballot, stating that:

> Stoner argues that the proper and only time that the courts may review the constitutionality of a proposed initiative is *after* the electoral die is cast in a general election. In effect, she argues for unbridled ballot box chaos. This argument runs counter to all notions of ballot box efficiency and notice to the electorate.
>
> We hold today that §§ 23-17-1 et seq. do not divest the Circuit Court of the First Judicial District of Hinds County of its jurisdiction as set forth in section 156 of the Constitution. As such, this circuit court is the proper venue and has jurisdiction to review the facial constitutionality of proposed initiatives.

*Measure 20*, 774 So. 2d at 401 (¶¶15-16). Beyond question, the issue of the authority of the Court to conduct a pre-ballot review of the facial constitutionality of proposed initiatives was before the *Measure 20* Court. The *Measure 20* Court acknowledged that proposed initiatives should not be reviewed for merit or lack thereof. *Id.* at 401 (¶17) (citing *Ratliff*, 72 So. 864). But the Court held that proposed initiatives should be reviewed for form, and content is reviewed "inasmuch as content affects form and form affects content." *Id.*

8

¶19. The majority claims that the **Measure 20** Court did not cite authority for its position and, thus, its holding is only dicta. Once again, I disagree. The authority for that holding is implicit in the Mississippi Constitution.

¶20. Circuit courts have jurisdiction to determine whether proposed initiatives violate the constitution. Section 156 of the Constitution provides, in part, that "[t]he circuit court shall have original jurisdiction in all matters civil and criminal in this state not vested by this constitution in some other court . . . ." Miss. Const. art 6, §156. Section 146 of the Constitution provides this Court with appellate jurisdiction of such matters, providing, in part: "The Supreme Court shall have such jurisdiction as properly belongs to a court of appeals and shall exercise no jurisdiction on matters other than those specifically provided by this Constitution or by general law." Miss. Const. art 6, §146.

¶21. Mississippi Constitution Article 15, Section 273(5), provides, in pertinent part, that: "The initiative process shall not be used . . . [f]or the proposal, modification or repeal of any portion of the Bill of Rights of this Constitution[.]" Any proposed initiative which runs contrary to Section 273(5) does not meet the procedural requirements for submission as a voter-driven initiative. The Constitution strictly prohibits any such act. It follows that circuit courts must review the content of a proposed initiative to determine whether it procedurally violates Section 273(5). Such an inquiry does not (and should not) address the merits or lack thereof of the proposed initiative. Logically, it follows that this Court has jurisdiction to review the circuit court's ruling.

¶22. The majority further seeks to dismiss this Court's holding in **Measure 20** by saying, "But the **Measure 20** Court went on to implicitly hold that *substantive* challenges to

9

proposed initiatives are also proper for pre-election review. Citing no constitutional, statutory, or caselaw authority, the *Measure 20* Court stated that 'proposed initiatives are subject to review of form and, therefore, *content* inasmuch as content affects form and form affects content.' The lack of authority is no surprise, as such authority is nonexistent. In fact, our existing caselaw has held exactly the opposite." (Citations omitted).

¶23.    First, it must be noted that, to the extent the ruling in *Measure 20* conflicts with prior rulings of this Court, such as *Ratliff*, it is the last-adopted ruling and should take priority. The Supreme Court has stated that "when we embark upon [a] new interpretation [of the Constitution] we must divine that interpretation which best fits the constitutional text and which flows from the best justification that may be given for the continued inclusion of that text in the Constitution." *State ex rel. Moore v. Molpus*, 578 So. 2d 624, 637 (Miss. 1991) (citations omitted). One year after the Supreme Court's ruling in *Molpus*, Section 273 was amended to include, among others, subsections 3 and 5. *See* 1992 Miss. Laws 1318-1322.

¶24.    The *Molpus* court also stated that:

> [*Power v. Ratliff*] is an interpretation of Section 273 as it existed prior to 1959. Courts do not normally overrule readings of statutes which have been amended. The obvious reason is that the amendment itself overrules the prior interpretation, which becomes for all practical purposes relegated to history.

*Molpus*, 578 So. 2d at 639. That reasoning applies here as well. Section 273 was substantially amended in 1992. *See* 1992 Miss. Laws 1318-1322. *Ratliff* is an interpretation of Section 273 as it existed prior to 1992. *See* 1912 Miss. Laws. 450-51. The 1992 amendment, for all practical purposes, negated the prior interpretation. Thus, the Supreme Court's interpretation of Section 273 in *Measure 20* should control today's decision.

¶25. Second, while this Court expresses a commitment to the principle of *stare decisis*, by a simple majority vote, it has not hesitated to ignore or overrule prior decisions when deemed appropriate. This observation is not intended to suggest that I take lightly the principle of *stare decisis.* However, a slavish devotion to prior decisions can produce irrational results. Perhaps the best example is the doctrine of "separate but equal." In 1896 the United States Supreme Court upheld segregation laws. ***Plessy v. Ferguson***, 163 U.S. 537, 16 S. Ct. 1138, 41 L. Ed. 256 (1896). If the United States Supreme Court had blindly followed the principle of *stare decisis*, it would have continued to uphold those laws. Thankfully, the Court had the wisdom and fortitude to ignore its prior precedent and overrule the separate-but-equal doctrine. ***Brown v. Bd. of Educ.***, 347 U.S. 483, 74 S. Ct. 686, 98 L. Ed. 873 (1954).

¶26. Section 273(5) clearly states that the initiative process *shall not* be used to propose, modify, or repeal any portion of the Bill of Rights. Miss. Const. art. 15, §273(5). To determine whether an initiative seeks to propose, modify, or repeal a portion of the Bill of Rights, reviewing courts must consider the content of the proposed initiative for that limited purpose. Thus, we *shall not* allow initiatives that seek to propose, modify, or repeal any portion of the Bill of Rights on the ballot. ***Ratliff*** is inapplicable. ***Measure 20*** is not an unreasonable reading or application of the 1992 amendments to Article 15, Section 273. Nor has this Court's holding in ***Measure 20*** been overruled. I would therefore proceed actually to address the matter which this Court accepted on an expedited basis, but now declines to address.

¶27. Since the majority does not address whether Initiative 31 violates Section 273(5), I reserve my views of that matter until it once again returns to this Court.

11

**KITCHENS, J., JOINS THIS OPINION.**