# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2010-CA-01949-SCT

*DEBORAH HUGHES AND CRISTEN HEMMINS*

*v.*

*DELBERT HOSEMANN, P. LESLIE RILEY, JR.*
*AND PERSONHOOD MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/09/2010 |
| TRIAL JUDGE: | HON. S. MALCOLM O. HARRISON |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | ROBERT B. MCDUFF |
| | J. CLIFTON JOHNSON, II |
| | ALEXA KOLBI-MOLINAS |
| | SUZANNE NOVAK |
| | DIANA O. SALGADO AGUILAR |
| ATTORNEYS FOR APPELLEES: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: HAROLD EDWARD PIZZETTA, III |
| | STEPHEN M. CRAMPTON |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | VACATED AND DISMISSED - 09/08/2011 |

MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.     In November 2008, P. Leslie Riley and an organization known as Personhood Mississippi filed an initiative, now known as Measure 26, with the Office of the Secretary of State. The initiative was qualified by the Secretary of the State to be placed on the general-election ballot. Thereafter, Deborah Hughes and Cristen Hemmins ("Plaintiffs") filed a complaint for declaratory and injunctive relief in Hinds County Circuit Court against

Secretary of State Delbert Hosemann, challenging Measure 26 as a violation of Article 15, Section 273(5)(a) of the Mississippi Constitution.[1]

¶2. On August 10, 2010, Plaintiffs filed a motion for judgment on the pleadings. The Secretary of State replied with a response to that motion. Then, on September 30, 2010, the trial court entered and approved an Agreed Order, allowing Riley and Personhood Mississippi (collectively,"Intervenors") to intervene. In that same order, all parties agreed that this case was "based on questions of law" and "should be resolved by way of judgment on the pleadings." Subsequently, after considering the motion and responses, having heard oral argument,[2] and being otherwise fully advised in these matters, the trial court denied Plaintiffs' motion for judgment on the pleadings, finding that they had not carried their heavy burden in attempting to restrict the citizenry's right to amend the Constitution.

¶3. Thereafter, the trial court entered an additional order, titled "Final Judgment." The trial court ruled that the denial of Plaintiffs' motion for judgment on the pleadings disposed of the case. Additionally, the trial court ruled that "final judgment is hereby entered in favor of the" Secretary of State and the Intervenors. Plaintiffs now appeal the trial court's decision.

ANALYSIS

---

[1] Plaintiffs did not dispute the form of the petition, as they did not challenge the sufficiency of the petition and/or the ballot title or summary of the proposed initiative measure. *See* Miss. Code Ann. §§ 23-17-13, -23, -25 (Rev. 2007).

[2] In the trial court's October 26, 2010, order, it stated that it had heard oral argument. No transcript of an oral argument is in the record on appeal.

2

¶4. On appeal, Plaintiffs request that this Court reverse the judgment of the trial court, find that Measure 26 is unconstitutional and invalid, and enjoin the Secretary of State from placing Measure 26 on the ballot in the November 2011 election. This opinion in no way speaks to the merits of Measure 26, but rather focuses on whether Measure 26 is ripe for review by the judiciary, which is a question of law. This Court conducts a de novo review of questions of law. *Miss. Transp. Comm'n v. Fires*, 693 So. 2d 917, 920 (Miss. 1997).

¶5. Throughout the record, Plaintiffs question the substance[3] of Measure 26. However, Plaintiffs have not raised any objections to the *form* of Measure 26 as set forth in Mississippi Code Sections 23-17-1 to 23-17-61. To be clear, it is the province of this Court to interpret the meaning of the Mississippi Constitution, and no opinion issued by this Court has interpreted the meaning of the word *person* as it is used throughout the Constitution. The dissent worries that Measure 26 "seeks to modify the definition" of "person or persons" as they appear in the Mississippi Constitution. But those terms have never been defined. Therefore, Measure 26 cannot modify a definition that does not now exist.

¶6. Essentially, Plaintiffs ask this Court to render judgment upon the substance of Intervenors' initiative – its constitutionality – in advance of the election. The dissent questions the majority's understanding of what Plaintiffs are seeking, yet it is clear that Plaintiffs are requesting a ruling on the substance of the proposal – its text – which is the essence of substantive review. Even my learned colleague admits in dissent that Plaintiffs are attacking the "very text of Measure 26," which, again, is the fundamental nature of a

---

[3] They question the meaning of the words used within the *text* of Measure 26.

3

substantive inquiry. Issuing a ruling on whether the text comports with the Constitution would be the same as issuing a substantive ruling on the constitutionality of the proposal itself, which this Court is without authority to do. *Power v. Ratliff*, 72 So. 864, 867 (Miss. 1916); *Barnes v. Barnett*, 129 So. 2d 638, 642 (Miss. 1961). As a matter of judicial policy, this Court does not issue advisory opinions.

¶7.     Ultimately, the judiciary's power is restricted in reviewing the constitutionality of a proposal, regardless of whether that proposal is proffered by a legislator or through a voter initiative. Our law provides that this Court cannot interfere with the legislative act of the people, just as this Court cannot interfere with the attempt of the Legislature to pass a law. *See Ratliff*, 72 So. at 867; *see also Barnett,* 129 So. 2d at 642. Moreover, this Court has found that advance opinions will not be issued to remove alleged clouds or uncertainties from proposed statutes or constitutional amendments. *See Ratliff*, 72 So. at 867. It is not within the province of this Court to render advisory opinions. *Sheldon v. Ladner*, 38 So. 2d 718, 719-20 (Miss. 1949); *see also Tallahatchie Gen. Hosp. v. Howe*, 49 So. 3d 86, 93 (Miss. 2010) ("[T]his Court does not issue advisory opinions.").

¶8.     In 2000, this Court found that it did have authority to review the constitutionality of proposed initiatives. *In re Proposed Initiative Measure No. 20*, 774 So. 2d 397, 401 (Miss. 2000). But the authority which would grant the *Measure 20* Court that power is glaringly absent from its analysis. *Id.* This Court cannot draw upon authority which it does not have. *Common Cause of Mississippi v. Smith*, 548 So. 2d 412, 414 (Miss. 1989) (citing *Jackson v. Gordon*, 11 So. 2d 901, 902 (Miss. 1943)).

4

¶9. In *Measure 20*, the Court was presented with a pre-election challenge to "a proposed initiative measure to prohibit gambling within the state, except gambling sponsored by religious, educational or wildlife organizations."[4] *Measure 20*, 774 So. 2d at 398. The trial court had held that the measure would not be placed on the ballot because, among other things, it "impermissibly attempted to amend the Bill of Rights[,]" and "failed to include a government revenue impact statement" as required by Article 15, Section 273(4) of the Mississippi Constitution. *Id*. at 399. On appeal, the *Measure 20* Court focused mainly on the sponsor's compliance with the government revenue-impact-statement requirement of Article 15, Section 273(4). *Id.* at 401-02. The Court concluded that the measure "clearly violate[d] Section 273(4)" as it did "not include a government revenue impact statement[,]" a defect in *form*. *Id.* at 402.

¶10. Notwithstanding that dispositive conclusion, the *Measure 20* Court expanded its remarks gratuitously to consider whether all measures are subject to "*substantive* review by the courts." *Id*. at 401 (emphasis added). While the *Measure 20* Court recognized *Ratliff* for the proposition that "proposed initiatives will not be reviewed by this or any other court

---

[4] The initiative and referendum amendment, which had been inserted into the Mississippi Constitution following a general election in November 1914, was deemed unconstitutional and void in 1922. *See* *State ex rel. Moore v. Molpus*, 578 So. 2d 624, 628 (Miss. 1991); *Power v. Robertson*, 93 So. 769, 775-77 (Miss. 1922). Thereafter, a specified initiative process was nonexistent in Mississippi until 1992, when Article 15, Section 273 of the Mississippi Constitution was amended to provide that "[a]mendments to this Constitution may be proposed by the Legislature *or by initiative of the people*." Miss. Const. art. 15, § 273(1) (emphasis added). In 2000, *Measure 20* provided the first appellate challenge to a proposed initiative measure following the 1992 amendment.

5

for their wisdom and merit[,] . . . [t]he voters make those decisions[,]" it then proceeded to disregard the result and principles announced in **Ratliff**. **Id**. (citing **Ratliff**, 72 So. at 864).

¶11.     Specifically, *without any supporting citation*, the **Measure 20** Court stated that "proposed initiatives are subject to review of form and, therefore, content inasmuch as content affects form and form affects content.  Simply put, initiatives must meet minimum constitutional and statutory requirements, prior to being placed on the ballot to ensure full disclosure and notice to the electorate." **Measure 20**, 774 So. 2d at 401.  The **Measure 20** Court added further that there must be a "place" and "procedure" for reviewing the "facial constitutionality of a proposed initiative . . . ." **Id**.  But, given **Measure 20**'s holding that the absence of a government revenue-impact statement "clearly violates Section 273(4)[,]" all additional comments regarding the "substantive review" of proposed initiative measures were mere dicta – surplusage, which *no court* is bound to follow.

¶12.     For those who argue that these statements were necessary for the disposition of the case, those conclusions are unfounded.  Form and substance are separable, because content relates to what composed something (i.e., the different fibers that together form cloth), whereas form involves appearance or shape (i.e., the color or pattern of the cloth), apart from the materials.  If **Measure 20** suggests that form is inseparable from content, such a notion is unsupported both by existing law in this State and, more fundamentally, the basic laws of

6

physics.[5]  Legally, any attorney who objects to a leading question[6] can appreciate the distinction.  *See* URCCC 1.11; *see also* Miss. R. Civ. P. 7 cmt. (distinguishing substance and form in motions).  Physically, the fact that ice, snow, and steam are all different forms of the same substance (water) undoubtedly illustrates the natural distinction between form and content.

¶13.   All can agree that "minimum constitutional and statutory requirements" must be met before a measure is "placed on the ballot . . . ."  *Measure 20*, 774 So. 2d at 401.  There are two stages for challenging an initiative-driven constitutional amendment: 1) pre-election, as to form, and 2) post-election, as to substance.  The *Measure 20* Court muddied the water, and to the extent that *Measure 20* is read to provide pre-election substantive review of proposed constitutional amendments, it is overruled.[7]  We agree with the dissent that the wisdom and merit of proposed initiatives are best left to the purview of the voters.  *See Measure 20*, 774 So. 2d at 401 (citing *Ratliff*, 72 So. at 864).  Thus, we must return to and follow the proper standard as articulated in both *Ratliff* and *Barnett*.  This Court is without power to determine the constitutionality of a proposed statute, amendment, or initiative prior to its approval by the Legislature or electorate.

---

[5] The dissent erroneously finds that the *Measure 20* Court did not equate content with substance.  Yet, that is exactly what that Court did in finding that content affects form and form affects content.  *See Measure 20*, 774 So. 2d at 401.

[6] This is an objection to its form, although the content of the question may pertain to the most critical element of the case.

[7] We agree with the dissent's proposition that the *Measure 20* Court in no way decided the case on the underlying merits of whether prohibiting gambling is unconstitutional under the Bill of Rights, but to the extent *Measure 20* is read otherwise, it is overruled.

7

¶14.    The dissent agrees that *Ratliff* prohibits substantive challenges, yet it equates the situation at hand to "facial validity," hinging on the notion that the issue before us concerns "the very text of Measure 26." Yet, the dissent ignores the fact that this Court cannot address the validity of a proposal prior to an election. The dissent relies upon *Robertson* to question the validity of the petition, but there is no authority which allows this Court to address the validity of the proposal prior to an election. The *Robertson* Court possessed the authority to address validity – this is the distinguishing mark of *Robertson*. *Robertson*, 93 So. at 772. There, the Court had the power to review validity, as the Constitution at that time allowed validity to be attacked. *See id.* Nothing in our Constitution as it exists today gives this Court the authority to review the validity of a proposal prior to its enactment, which is exactly what Plaintiffs request this Court to do.[8] This Court is without power to interfere with pre-election proposals, because to do so may place the administration of government at the footstool of the judiciary. *Ratliff*, 72 So. at 866-67.

¶15.    In the trial court's final order, it entered a judgment in favor of the Secretary of State and Intervenors against Plaintiffs. However, neither the Secretary of State nor Intervenors proffered a motion or counterclaim requesting any relief or judgment. Even though one might allege that Measure 26 violates Article 15, Section 273(5)(a), that determination is premature, because this Court would have to review the substantive constitutionality of the

---

[8] "The making of the laws belongs to a co-ordinate branch of the government, and the *courts have nothing to do with the making, but must deal altogether with the finished product.*" *Ratliff*, 72 So. at 867 (emphasis added).

proposal prior to its enactment. Additionally, this Court would have to decide issues on appeal that were not clearly or properly addressed by the trial court. We simply cannot render a decision on the constitutionality of a proposal pre-election. *See **Ratliff***, 72 So. at 867; *see also **Barnett***, 129 So. 2d at 642. This Court repeatedly has held that we cannot and will not rule upon issues not decided by the trial court below. "Logic is strained at the thought of an appellate court affirming or reversing a decision never made." ***Tricon Metals & Servs., Inc. v. Topp***, 516 So. 2d 236, 239 (Miss. 1987). Just as this Court cannot prohibit legislators from offering proposals in the House or Senate, this Court cannot impede voters from submitting proposals through the voter initiative process.

¶16.    Pre-election challenges of voter-initiative proposals are subject only to the review of the sufficiency of the petition[9] itself (i.e., its form) and not its constitutionality (i.e., its substance). Miss. Const. art. 15, § 273(9); *see also* Miss. Code Ann. §§ 23-17-13,[10] -23,[11]

---

[9] When read in accordance with Mississippi Code Sections 23-17-1 to 23-17-61, "sufficiency of petitions" found in Article 15, Section 273(9) refers to Mississippi Code Sections 23-17-13, -23, -25.

[10] Mississippi Code Section 23-17-13 allows a challenge of the ballot title or summary formulated by the Attorney General. Miss. Code Ann. § 23-17-13 (Rev. 2007).

[11] Mississippi Code Section 23-17-23 allows the Secretary of State to refuse to file an initiative because: the petition is not in the proper form; the petition bears insufficient signatures; one or more of the signatures on the petition is invalid; the time within which the petition can be filed has expired; and the petition is not accompanied with appropriate filing fee. Miss. Code Ann. § 23-17-23 (Rev. 2007).

-25 (Rev. 2007).[12]  This Court will exercise judicial restraint and follow the reasoning of the majority of courts throughout the United States, both federal and state, which:

> have articulated a policy of deference toward direct legislation processes.  For example, in an early case the United States Supreme Court declined to review a challenge asserting that the initiative is inconsistent with the federal constitutional guarantee of a republican form of government, declaring the issue a nonjusticiable political question.

James D. Gordon, III & David B. Magleby, *Pre-Election Judicial Review of Initiatives and Referendums*, 64 Notre Dame L. Rev. 298, 300-01 (1989) (citing **Pacific States Tel. & Tel. Co. v. Oregon**, 223 U.S. 118, 150-51, 32 S. Ct. 224, 231, 56 L. Ed. 377 (1912)).  We cannot invade the territory of the Legislature or the electorate to review the substantive validity of a proposed initiative, and thereby, we will honor the maxim embodied in the constitutional mandate of separation of powers.  Miss Const. art. 1, §§ 1, 2.

## CONCLUSION

¶17.    Measure 26 is not ripe for review.  Thus, we vacate the trial court's final judgment in favor of Intervenors and Secretary Hosemann.  We render judgment, finally dismissing plaintiffs' complaint and this action without prejudice.

¶18.    **VACATED AND DISMISSED.**

**WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, LAMAR AND CHANDLER, JJ., CONCUR. RANDOLPH, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., CARLSON AND**

---

[12] Mississippi Code Section 23-17-25 provides that if the Secretary of State refuses to file an initiative, the sponsor of the initiative can seek an order from this Court requiring the Secretary of State to bring the petition before the Court and for a writ of mandamus compelling him to file it.  Then, this Court can review only the "legal form," the signatures, the time within which the initiative was filed, and whether the petition was accompanied with the appropriate filing fee.  Miss. Code Ann. § 23-17-25 (Rev. 2007).

**DICKINSON, P.JJ., LAMAR, CHANDLER AND PIERCE, JJ. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.**

**RANDOLPH, JUSTICE, SPECIALLY CONCURRING:**

¶19.   Hughes and Hemmins ("Opponents") challenge the substantive, facial validity of Proposed Initiative Measure No. 26 ("measure") and are "anxious to have this [C]ourt pass upon the case upon [those] merits . . . ." *Power v. Ratliff*, 112 Miss. 88, 72 So. 864, 865 (1916) (citation omitted).   This, despite the fact that there remain underlying issues "so serious" that this Court should not "feel justified in waiving or ignoring" them. *Id*.   Those subjects include the absence of justiciability and our judicial policy against issuing advisory opinions, both of which have been astutely addressed by Justice Pierce.   I am in complete accord with his analysis, and write separately only to comment upon the subjects addressed by Justice Pierce and to offer additional reasoning why the dissent's proposed disposition, reversing the judgment of the circuit court and rendering judgment in favor of the Opponents, would be clearly erroneous.

**STATUS OF THE PROCEEDINGS**[13]

¶20.   In November 2008, P. Leslie Riley and Personhood Mississippi ("Proponents") submitted the language of what would become the measure to the Mississippi Secretary of State's office.   Thereafter, some 106,325 certified signatures were collected in support of the measure.[14]   In February 2010, the petitions were submitted for filing with Mississippi

---

[13]I add the following to supplement Justice Pierce's introduction and highlight the procedural posture of this case when it arrived at our doorstep.

[14]The Proponents contend that approximately 130,000 "signatures from qualified electors" were collected.   In either case, the figure far exceeded the requirement of 89,285 certified signatures, at least 17,857 of which were from each of Mississippi's former five

11

Secretary of State Delbert Hosemann ("Secretary") who, following review, stated that "[p]ursuant to Mississippi Code Section 23-17-23, . . . having found none of the grounds for refusal exists, [the measure] is accepted and filed." After the Attorney General performed his duties related to the ballot title and summary,[15] the measure was filed with the Legislature. The Legislature then had its opportunity to adopt, amend, or reject the measure. *See* Miss. Code Ann. § 23-17-29 (Rev. 2007). But the Legislature chose none of the aforementioned alternatives during the four months it was in session. Thus, the Secretary followed his mandated duty and "place[d] the initiative on the ballot for the next statewide general election." *Id*.

¶21. Only then did the Opponents file a "Complaint for Declaratory and Injunctive Relief" to "challenge the constitutionality of" the measure and enjoin the Secretary from placing it on the ballot. They alleged that the measure "seeks to propose a new provision to the Bill of Rights . . . and to modify the terms 'person' and 'persons' as used throughout the Bill of Rights . . . ." The Secretary, as well as the Proponents, denied these allegations in their respective Answers. The Opponents alleged standing "[a]s duly qualified electors and taxpayers of the State of Mississippi[,]" which was likewise denied by the Secretary and the Proponents. The Opponents prayed for the circuit court to declare the measure "unconstitutional and invalid[;]" to enjoin the Secretary from even "delivering the measure

_____

congressional districts. *See* Miss. Const. art. 15, § 273(3). I also note that ***In re Proposed Initiative Measure No. 20***, 774 So. 2d 397 (Miss. 2000), involved a suit filed before any signatures were obtained by the sponsor.

    [15]*See* Miss. Code Ann. § 23-17-9 (Rev. 2007).

12

to the Legislature so that it may appear on the November 2011 ballot[;]" and also to enjoin the Secretary "from placing [the measure] on the ballot."

¶22.    In the Opponents' Rule 12(c) "Motion for Judgment on the Pleadings" and subsequent "Combined Reply to Defendant Secretary of State and Defendant Intervenors Responses in Opposition to Plaintiffs' Motion for Judgment on the Pleadings" (with submitted supplemental exhibits), they averred that they "do *not* here challenge the *sufficiency* of . . . Measure 26, but instead challenge its facial constitutionality . . . ." (Emphasis added.)

¶23.    In response, the Proponents averred that the measure "proposes no new right, . . . modifies no existing right, and . . . repeals no portion of the existing Bill of Rights." They cited Article 3, Sections 5 and 6 of the Mississippi Constitution to "underscor[e] the sovereignty of the people[,]"[16] and pleaded that the Opponents' efforts "to force the issue off the ballot" would "den[y] the citizens of this great State the right to vote and express themselves on this weighty issue of public importance." The Proponents also contested standing and subject-matter jurisdiction, which they asserted are "threshold" inquiries that "must be determined before the court has authority to decide whether plaintiff has stated a

---

[16]Article 3, Sections 5 and 6 of the Mississippi Constitution provide, in pertinent part, that:

> **Sec. 5.** All political power is vested in, and derived from, the people; all government of right originates with the people, is founded upon their will only, and is instituted solely for the good of the whole.

> **Sec. 6.** The people of this state have the inherent, sole, and exclusive right to regulate the internal government and police thereof, and to alter and abolish their constitution and form of government whenever they deem it necessary to their safety and happiness . . . .

Miss. Const. art. 3, §§ 5, 6 (1890).

claim upon which relief may be granted." ***Schmidt v. Catholic Diocese of Biloxi***, 18 So. 3d 814, 821 (Miss. 2009); ***Luckett v. Miss. Wood Inc.***, 481 So. 2d 288, 290 (Miss. 1985).

¶24. The Opponents submitted no evidence or proof to the circuit court to support either a declaratory judgment or an injunction prior to the "Order" denying the Opponents' "Motion for Judgment on the Pleadings." The circuit court first noted that no sufficiency issues were present, as the measure had "the required number of signatures certified by the various clerk offices, was timely submitted to the [Secretary] and has received an official ballot title and summary as required by Miss. Code Ann. Section 23-17-9." The circuit court further found that the Opponents "carry a heavy burden in attempting to restrict the citizenry's right to amend the Constitution[,]" as "the Constitution recognizes the right of citizens to amend their Constitution." The circuit court concluded that the Opponents "have not met their burden[,]" and denied the relief sought. Fourteen days later, the circuit court entered a "*Final Judgment*" (agreed as to form only), finding "that order *disposes of the case*." (Emphasis added.)

## ANALYSIS

### *(1) Ripeness*

¶25. "It is not the policy of this state to have elections and other political matters of government reserved to legislative discretion to be interfered with by the judges and officers of the judicial department of the government." ***Gibbs v. McIntosh***, 78 Miss. 648, 29 So. 465, 465-66 (1901). Rather, "the inclination of judicial thought in this state is that elections of all sorts are not to be interfered with by the courts." *Id*. at 466 (citing ***Ex parte Wimberley***, 57 Miss. 437 (1879); ***Ferguson v. Board***, 71 Miss. 524, 14 So. 81 (1893)). *See also* ***Power v.***

14

***Robertson***, 130 Miss. 188, 230-31, 93 So. 769, 774 (1922) (citing ***Ratliff***, 72 So. at 864) ("declin[ing] to take jurisdiction of [its] controversy, on the ground that equity had no jurisdiction to enjoin elections or enforce political rights . . . .").

¶26.    As recognized by Justice Pierce, the ***Ratliff*** Court addressed proposed initiative measure-type cases, stating that when:

> qualified electors . . . are . . . attempting the performance of a legislative act, . . . *courts have no more right to interfere with this legislative act of the people than they have to prevent an abortive attempt of the Legislature to pass a law*. The making of . . . laws belongs to a co-ordinate branch of the government, and . . . *courts have nothing to do with the making, but must deal altogether with the finished product*. The complainants in the present proceedings are *seeking an advance opinion as to the validity of a constitutional amendment before that amendment has been enforced in a way to affect the substantial property rights of anyone*. There is no law authorizing a bill of complaint to remove an alleged cloud on or uncertainty about a statute or constitutional amendment *before the same has been put into force and effect in a way to injure the parties complaining*.

***Ratliff***, 72 So. at 867 (emphasis added). The ***Ratliff*** Court determined that to rule otherwise "would tend too much to government by injunction. It is time enough to elicit an expression of the court as to the validity of a *law or constitutional amendment* when the *substantial rights of litigants have been invaded*." ***Id***. (emphasis added). As such, only:

> [w]hen laws *have been passed* no doubt in a proper case the inquiry can *then* be made as to whether or not the requirements of the fundamental law . . . in their provisions have been observed, but in the first instance the body to which has been delegated the power to pass laws must be left untrammeled, to act in such matters as its wisdom may dictate.

***Id***. (quoting ***O'Reilly v. Mills, Sec'y of State***, 30 Colo. 262, 265, 70 P. 322, 323 (1902)) (emphasis added). Thus, the ***Ratliff*** Court concluded that the "safer policy" was for it to "refrain from interfering with the free exercise of the *legislative functions* of government

15

whether attempted to be exercised by the Legislature *or by the people in their sovereign capacity*." **Id**. at 869 (emphasis added).

¶27. At present, the measure is mere legislation in process, a not-yet-finished product put forth for debate and consideration by the people, but which has not derived any "vital force" via "the action of the people at the ballot-box . . . ." **Green v. Weller**, 3 George 650, 32 Miss. 650, at *21 (Miss. Err. & App. 1856). As the measure is now only a "political matte[r] of government[,]" i.e., a political question, it ought not "be interfered with by the judges and officers of the judicial department of the government." **Gibbs**, 29 So. at 465-66. *See also* **Int'l Longshoremen's & Warehousemen's Union, Local 37 v. Boyd**, 347 U.S. 222, 224, 74 S. Ct. 447, 448, 98 L. Ed. 650 (1954) ("Determination of the scope and constitutionality of legislation in advance of its immediate effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function."). To do so plainly conflicts with separation-of-powers principles. *See* Miss. Const. art. 1, §§ 1, 2; **Tilson v. Mofford**, 153 Ariz. 468, 737 P.2d 1367, 1369 (1987) ("[j]ust as under the separation of powers doctrine the courts are powerless to predetermine the constitutionality of the substance of legislation, so also they are powerless to predetermine the validity of the substance of an initiated measure."); **Ratliff**, 72 So. at 867 (quoting **O'Reilly**, 70 P. at 322) ("[t]he judicial department can no more interfere with . . . the successive steps necessary to be taken to amend the Constitution than it can with the [Legislature] in the passage of other laws, because the judicial cannot directly interfere with the functions of the legislative department."). In exercising the same judicial restraint exhibited by the **Ratliff** Court, we have validated the sovereign right of the people to vote on this measure, affirming the

16

principle that government is "of," "by," and "for" the people, not their elected officials. *See* Abraham Lincoln, *The Gettysburg Address* (Nov. 19, 1863). Today's decision respects the rights of 106,325 citizens who signed these petitions and an incalculable number of citizens who otherwise support a vote, pro or con, on the measure. *See* **Green**, 32 Miss. 650, at *21 (a proposition is "to be submitted to the action of the people[,]" and necessarily "derives all its vital force from the action of the people at the ballot-box . . . .").

¶28.  In sum, the present challenge to the *substantive*, facial validity of the measure is not ripe for consideration. There is time enough in the future to consider whether the measure, *if* passed, is substantively, facially invalid, *vel non*. But since the voters of Mississippi may choose to reject this measure, we have properly refused "to anticipate conditions which may never arise."[17] **Ratliff**, 72 So. at 868.

## (2) Advisory opinion

¶29.  Without presenting any facts or evidence, the Opponents seek an impermissible "advance opinion as to the validity of" the measure before the measure "has been enforced in a way to affect the substantial property rights of anyone." **Ratliff**, 72 So. at 867. Today, we follow our long standing policy that we do not "settle questions in the abstract or . . . issue advisory opinions." **Tallahatchie Gen. Hosp. v. Howe**, 49 So. 3d 86, 93 (Miss. 2010) (quoting **Scoggins v. Baptist Mem'l Hosp.-DeSoto**, 967 So. 2d 646, 649 n.1 (Miss. 2007)). (Maj. Op. at ¶ 7).

¶30.  According to learned jurist Felix Frankfurter, "[o]ur national experience makes it clear that it is extremely dangerous to encourage extension of the device of advisory opinions to

---

[17]If the measure is not passed, there will be no issue requiring judicial determination.

17

constitutional controversies, in view of the nature of the crucial constitutional questions and the conditions for their wise adjudication." Felix Frankfurter, *A Note on Advisory Opinions*, 37 Harv. L. Rev. 1002, 1002 (1924). Fundamentally, the reluctance to issue advisory opinions is rooted in separation-of-powers principles. The constitutionally-imposed duty of the courts is to "decid[e] litigated cases . . . ." *Id*. at 1007 (citation omitted). But courts are not called upon to "sit in judgment upon the wisdom or fairness or utility of legislation. The Supreme Court is not a House of Lords with revisory power over legislation. . . . Such deference is not merely a gesture of courtesy. It is the formulation of a basic truth in the distribution of governmental powers." *Id*. at 1003. Furthermore, in the absence of facts presented, the "tendency to deal with [such issues] abstractedly, to formulate them in terms of sterile legal questions, is bound to result in sterile conclusions unrelated to actualities."[18] *Id*. at 1003. The danger in "ill-considered advisory opinions" detached from real, factual contexts is that their well-intentioned propositions may well become "millstones around the necks of succeeding generations[,]" and create the risk that:

> [o]ne step taken by the legislature or judiciary in enlarging the powers of government opens the door for another, which will be sure to follow; and so the process goes on, until all respect for the fundamental law is lost, and the powers of the government are just what those in authority please to call them.

*Id*. at 1008 n.18; ***Bell v. City of West Point***, 51 Miss. 262, 1875 WL 4692, at *15 (Miss. 1875) (Peyton, C.J., dissenting) (citation omitted). Today, this Court wisely avoids these dangers by rejecting the plea to issue a premature and unnecessary advisory opinion.

---

[18]For instance, "[c]oncepts like 'liberty' and 'due process' are too vague in themselves to solve issues. They derive meaning only if referred to adequate human facts. Facts and facts again are decisive." Frankfurter, *A Note on Advisory Opinions*, 37 Harv. L. Rev. at 1004-05.

### *(3) Failure to State a Cause of Action*

¶31.    ***Robertson*** held that the initiative-and-referendum amendment at issue in that 1922 decision permitted challenges to both "the sufficiency *and validity* of the petition."[19] ***Robertson***, 93 So. at 772 (emphasis added). As such, the ***Robertson*** Court held that "any qualified elector has a right to question the sufficiency *and validity* of the petition." ***Id***. at 773 (emphasis added). By contrast, we find no present constitutional authority exists for pre-election appeals regarding the *validity* of petitions. (Maj. Op. at ¶ 15).

¶32.    Additionally, in their pleadings, the Opponents have not claimed or offered any proof or evidence to suggest that submission of this measure to the people will result in an invasion of substantive rights resulting in injury. Because there is no "amendment [that] has been enforced in a way to affect the . . . rights of anyone[,]" nothing "has been put into force and effect in a way to injure the parties complaining." ***Ratliff***, 72 So. at 867. As such, where is the "irreparable injury [that] will be done . . . by submission of this question to a vote of the people[?]" ***Id***. at 866. No civil rights will be trampled upon and no property will be damaged. Therefore, "[i]t cannot possibly hurt any one for the people to register their choice or will" on this measure. ***Id***. Any adverse effect is only "fanciful or theoretical" at this point.

---

[19]Notably, the former initiative-and-referendum amendment also provided that "[i]n the event of legal proceedings in any court to prevent giving effect to any petition upon any grounds, the *burden of proof* shall be upon the *person or persons attacking* the *validity* of the petition." ***Robertson***, 93 So. at 772 (quoting Chapter 159, Laws of 1916) (emphasis added).

*Id*. *See also **Conner v. Gray***, 88 Miss. 489, 41 So. 186, 189 (1906) ("They cannot maintain [a] bill simply because they fear some invasion may be made upon their rights as officers.").

¶33.    Given the absence of any claim of injury or loss of a civil right in the Opponents' pleadings, where is the justiciable issue?  "The proper remedy will be appropriate action to prevent the *execution* of any proposition *voted for*[,]" if an adverse effect can be shown, and the law is unconstitutional.  ***Ratliff***, 72 So. at 866 (citing ***Thompson v. Mahoney***, 136 Ill. App. 403 (1907)) (emphasis added).  At that point, "if any person's rights are affected thereby the courts are open for him to test the legality of the" constitutional amendment. ***Ratliff***, 72 So. at 868.

### *(4) "Motion for Judgment on the Pleadings"*

¶34.    The circuit court was presented only with a "Motion for Judgment on the Pleadings" by the Opponents.  The circuit court's "Order" *denying* the Opponents' "Motion for Judgment on the Pleadings" was nonappealable.  Nonetheless, the circuit court's subsequent "Final Judgment," from which this appeal proceeds, was entirely predicated upon the "Order" denying the Opponents' "Motion for Judgment on the Pleadings."  Specifically, the "Final Judgment" provided that the "Order" acted to "dispos[e] of the case."  But that "Order" was not case-dispositive, such that this matter is not even properly before this Court.[20]  (Maj. Op. at ¶ 15).

¶35.    Notwithstanding, with this Court having been provided the pleadings and arguments of the parties only on the "Motion for Judgment on the Pleadings," the dissent is ready to

---

[20]Typically, when a plaintiff's "Motion for Judgment on the Pleadings" is denied, the parties will meet and prepare a scheduling order and otherwise prepare for a trial.

address a significant constitutional issue, regarding the substantive merits of the measure, and concludes that the measure "runs afoul of the minimum constitutional requirements of Article 15, Section 273(5)(a) . . . ." (Diss. Op. at ¶ 37). Any such conclusion is premature at this stage of the proceedings.

**CONCLUSION**

¶36. I am "not unmindful of the fact that . . . on constitutional questions . . . 'an interpretation once deliberately put upon the provisions of such an instrument should not be departed from without grave reasons.'" ***State ex rel. Collins v. Jones***, 106 Miss. 522, 64 So. 241, 253 (1914). However:

> we must remember that the nature of our government is such that the Constitution is necessarily committed into the keeping of this [C]ourt; and, when this [C]ourt has erroneously interpreted that instrument, and no harm can follow the correction of such erroneous interpretation, its plain duty is to do so, and thereby enable the express will of the people to be carried into effect. *Especially is this true when the erroneous interpretation has restricted the people in the exercise of a right which they have expressly reserved to themselves*.

*Id*. (emphasis added). Under the Mississippi Constitution:

> There is nothing in the nature of the submission which should cause the free exercise of it to be obstructed, or that could render it dangerous to the stability of the government; because the measure derives all its vital force from the action of the people at the ballot-box, and there can never be danger in submitting, in an established form, to a free people, the proposition, whether they will change their fundamental law. The means provided for the exercise of their sovereign right of changing their Constitution, should receive such a construction as not to trammel the exercise of this right. Difficulties and embarrassments in its exercise are in derogation of the right of free government, which is inherent in the people.

*Id*. at 248 (quoting ***Green***, 32 Miss. 650, at \*21). Finally, as the ***Robertson*** Court stated:

> It is always a matter of regret that a court feels called upon to change a decision once reached; but official integrity requires a court, when it is fully

21

convinced that its decision is wrong and will result injuriously, to overrule it and decide correctly the proposition put up to it. I am not a believer in overruling decisions, when they are not clearly wrong and hurtful. A Constitution, however, is much more important and sacred than a decision of any court. The people by the Constitution establish a policy for the good of the people themselves. Where a court misconstrues the Constitution or misjudges a case, and its attention is called to it in the proper way, it should make a correction at the earliest date possible.

*Robertson*, 93 So. at 777 (citation omitted). These well-reasoned principles dictate my departure from the dissent's reliance upon *Measure 20*.

**WALLER, C.J., CARLSON AND DICKINSON, P.JJ., LAMAR, CHANDLER AND PIERCE, JJ., JOIN THIS OPINION.**

**KITCHENS, JUSTICE, DISSENTING:**

¶37. The majority finds that this matter is not ripe for review because we are asked to review the constitutionality of Measure 26 without its having been placed on the ballot and enacted by the voters of this state.[21] Because, as a matter of law, this controversy is ripe for

---

[21]I note that Secretary of State Hosemann, in his brief and in reliance on *In re Proposed Initiative Measure No. 20*, 774 So. 2d 397 (Miss. 2000) ("*Measure 20*"), states: "Initiative Measure No. 26's compliance with Section 273 of the Constitution is subject to judicial review prior to inclusion on the ballot." He goes on to concede: "[T]his matter is ripe for resolution." Moreover, neither the trial court nor any of the parties has raised the issue of the Mississippi courts' authority to hear this case.

I acknowledge that subject matter jurisdiction may be raised *sua sponte* by the Court and is never waived. *Esco v. Scott,* 735 So. 2d 1002, 1006 (Miss. 1999) ("[S]ubject matter jurisdiction may not be waived and may be asserted at any stage of the proceeding or even collaterally.") (citation omitted). However, I believe the Secretary's reliance on *Measure 20* is a testament to the importance of *stare decisis* and the need to preserve the holding of *Measure 20*. *See State ex rel. Moore v. Molpus,* 578 So. 2d 624, 634 (Miss. 1991) ("[S]tare decisis proceeds from that first principle of justice, that, absent powerful countervailing considerations, like cases ought to be decided alike.").

review, I must respectfully dissent from the contrary view of my learned colleagues in the majority. Measure 26, facially (as a matter of form) runs afoul of the minimal constitutional requirements of Article 15, Section 273(5)(a), of the Mississippi Constitution; thus, I would reverse the judgment of the Hinds County Circuit Court, First Judicial District, and render judgment in favor of the plaintiffs.

*We are faced with a challenge as to form, not of substance.*

¶38.   The majority concedes that "'minimum constitutional and statutory requirements'" must be met before a measure is "'placed on the ballot . . . .'" Maj. Op. at ¶ 13 (quoting *Measure 20*, 774 So. 2d at 401). The opinion goes on to say that "There are two stages for challenging an initiative-driven constitutional amendment: 1) pre-election, as to form, and 2) post-election as to substance." Maj. Op. at ¶ 13.   Indeed, prior to an election, this Court has jurisdiction to decide cases in which a challenge to a proposed initiative is directed at its form and to the question of whether, on its face, the measure meets minimum constitutional and statutory requirements. Where my esteemed colleagues and I disagree is whether at present this Court is faced with a substantive challenge and whether the Court, in *In re Proposed Initiative Measure No. 20*, 774 So. 2d 397 (Miss. 2000) ("*Measure 20*"), made provision for a substantive review of proposed constitutional amendments.

¶39.   The majority erroneously finds that "Plaintiffs ask this Court to render judgment upon the *substance* of the Intervenors' initiative – its constitutionality – in advance of the election." Maj. Op. at ¶ 6 (emphasis added). Rather, what Plaintiffs are asking this Court to decide is whether the text of the amendment comports with the minimal constitutional

23

requirements of Section 273 of the state constitution. I would hold that Measure 26 is defective in that regard, because the text of the measure purports to add a new section to this state's Bill of Rights and to modify the meaning of two words which appear some twenty times in our Bill of Rights. This is in direct contravention of Section 273(5)(a) of our state constitution, which reads: "The initiative process shall not be used [f]or the proposal, modification or repeal of any portion of the Bill of Rights to this Constitution."

¶40.    The majority is remiss in its reliance on *Power v. Ratliff,* 112 Miss. 88, 72 So. 864 (Miss. 1916), for three reasons: (1) the rule announced in *Ratliff* does not apply to challenges of an initiative based on form, which is the question before us in today's case; (2) the Court's holding in *Ratliff* was limited to the facts of that case, involving principles of equity and the requirements for obtaining injunctive relief; and (3) the *Ratliff* court was interpreting the initiative and referendum process as it existed in our constitution in 1916. Thus, it provides no binding legal precedent for interpreting Section 273 as it now appears in the constitution, which did not exist in its current form until 1992. Likewise, the Court, in *Barnes v. Barnett*, 129 So. 2d 638 (Miss. 1961), did not announce a blanket prohibition on courts to decide whether initiatives have met minimum statutory and constitutional requirements. To the contrary, the *Barnett* Court found that the proposed initiative met minimum constitutional requirements under Section 273 as it existed in 1961. *Barnett*, 129 So. 2d at 640-41 ("Constitution Sec[tion] 273 prescribes the necessary publication, and the method followed in the instant case was sufficient compliance with the constitutional requirement.").

¶41.    First, the rule announced in *Ratliff* touches on substantive challenges. As previously mentioned, the majority mistakenly concludes that Plaintiffs have made a substantive

24

constitutional challenge and thus erroneously rely on *Ratliff* to announce that this Court has no jurisdiction in such matters. The majority cites *Ratliff* for the premise that "this Court has found that advance opinions will not be issued to remove alleged clouds or uncertainties from proposed statutes or constitutional amendments." Maj. Op. at ¶ 7; *see Ratliff*, 72 So. at 867. This prohibits substantive challenges, not challenges to the facial validity of a proposed measure. The question before us is whether the form of Measure 26, on its face, meets minimum constitutional standards.[22]

¶42. Additionally, in *Ratliff*, 72 So. at 865, the complainants had obtained an injunction in chancery court to prevent the secretary of state from referring two proposed initiatives, one providing for alcohol prohibition and one described as the game and fish law, for a vote in accordance with the initiative and referendum amendment. The Court, relying on traditional principles of equitable jurisdiction, reversed the chancellor and dissolved the injunction because the plaintiffs had failed to show that a submission of the initiatives to the electorate would result in irreparable injury. *Id.* at 865-66. The reasoning behind this holding was that

---

[22] Since the challenge before this Court in this case is not whether the substance of Measure 26 is in direct contravention of the Bill of Rights, I reserve for another day a discussion of whether I believe this Court can be divested of its jurisdiction by the Legislature in cases involving substantive, pre-election challenges. *See* Miss. Const. art. 6, § 146 ("The Supreme Court shall have such jurisdiction as properly belongs to a court of appeals . . . ."); Miss. Const. art. 1, § 1 ("The powers of the government of the state of Mississippi shall be divided into three distinct departments, and each of them confided to a separate magistracy, to-wit: those which are legislative to one, those which are judicial to another, and those which are executive to another.").

the plaintiffs had failed to show that their petition for injunctive relief triggered property rights or civil rights. *Id.* at 865. The Court went on to say that, generally, equity does not provide for enjoining an election. *Id.* However, the Court also observed:

> It is not necessary to say that this rule obtains to the extent that equity will never restrain the holding of an election, for the door of the court is always open to those who seek protection in matters of property and the maintenance of civil rights or who reasonably apprehend the infliction of irreparable injury . . . [I]f an election is attempted to be held without authority of law, equity might well interfere.

*Id.* Thus, *Ratliff* does not say that an election will never be enjoined if it is to be held without authority of law. If Measure 26 is placed on the ballot, not having met minimum constitutional standards under Section 273, this, indeed, will be an election conducted without authority of law.

¶43. It is noteworthy that the standards applied in *Ratliff* were those apropos to obtaining injunctive relief. Thus, the analysis in *Ratliff* is limited to its facts, namely, whether those plaintiffs were entitled to injunctive relief under traditional principles of equity. The Court first distinguished *Ratliff* in *Power v. Robertson,* 130 Miss. 188, 93 So. 769, 774 (Miss. 1922): "[T]he only thing that the court decided [in *Ratliff*] was that equity had no jurisdiction in such cases. Quite a different question is presented here, because it is a circuit court whose jurisdiction is invoked, and whose judgment is sought to be reviewed in this case." As the *Robertson* Court explained, *Ratliff* was decided "on the ground that equity had no jurisdiction to enjoin elections or enforce political rights," a conclusion with which the Court concurred. *Robertson*, 93 So. at 774. However, the *Robertson* Court found that jurisdiction was proper in circuit court where the challenge involved the sufficiency of the petition in favor of the initiative, namely the qualifications of the electorate. *Id.* at 775 ("[C]ircuit court

26

has jurisdiction of all questions cognizable in the courts that have not been exclusively vested in other courts.") (citations omitted). In so doing, the Court reasoned:

> In our opinion any qualified elector has a right to question the sufficiency and validity of the petition. The initiative proceeding, reserving the legislative power in the people, makes each elector, if the amendment is valid, a part of the legislative machinery, and with rights as such in the enactment and proposal of legislation. The people who oppose the measure in our opinion have equal rights with those who favor the measure.

*Id.* at 773. Although *Robertson* interpreted the initiative process as it existed in 1922, it is clear that the Court was deciding, in advance of the election, whether the petition was valid and thus, whether the proposed initiative met minimum constitutional requirements, the same question before us today.

¶44.    Finally, this Court, in *State ex rel. Moore v. Molpus*, 578 So. 2d 624, 639 (Miss. 1991), explained that constitutional interpretation by this Court is tied to the text of our constitution as it existed at the time the decision was handed down.

> [*Power v. Robertson*, 93 So. 769 (Miss. 1922)] is an interpretation of Section 273 as it existed prior to 1959. Courts do not normally overrule readings of statutes which have been amended. The obvious reason is that the amendment itself overrules the prior interpretation, which becomes for all practical purposes relegated to history. There is no reason why the same principle should not apply to a provision of the Constitution such as Section 273.

Thus, *Ratliff* has no binding precedential value on this Court's interpretation of the requirements of Section 273 of the state constitution, since it did not exist in its current form until 1992. Just as Justice King astutely recognizes in his dissent in today's companion case, *Speed v. Hosemann*, 2011-CA-01106, *Measure 20* is the only binding legal precedent that interprets the current initiative process.

27

¶45.    In *Measure 20,* 774 So. 2d at 399,  the Court was presented with the issue of whether the circuit court had exceeded its authority in setting aside a proposed initiative making gaming illegal in this state due to the proposed measure's failure to include a government revenue-impact statement, as required by both statute and Section 273(4) of the Mississippi Constitution, and due to the measure's attempted prohibition of rights granted to citizens of this state under the Bill of Rights of the state constitution. The Court in *Measure 20*, having decided that jurisdiction had been proper in the circuit court under Article 6, Section 156, [23] of the state constitution, affirmed the circuit court's finding that the proposed measure was unconstitutional for its failure to include the government revenue-impact statement, as required by Section 273(4) of the state constitution. *Id.* at 402. In reaching that holding, the Court reasoned:

> [P]roposed initiatives are subject to review of form and, therefore, content inasmuch as content affects form and form affects content. Simply put, initiatives must meet minimum constitutional and statutory requirements, prior to being placed on the ballot to ensure full disclosure and notice to the electorate.

*Id.* at 401. This language clearly is not dictum, as the majority suggests, because it is directly linked to the holding in the paragraph immediately following, in which this Court decided that Measure 20, on its face and in its form, did not comport with Section 273(4) of the state constitution, due to its omission of a government revenue-impact statement. *See id.* at 401-02. Thus, the measure did not meet the minimal constitutional standards of Section 273 and could

---

[23] Article 6, Section 156, of the Mississippi Constitution states: "The circuit court shall have original jurisdiction in all matters civil and criminal in this state not vested by this Constitution in some other court."

28

not be placed on the ballot. It is inescapably obvious that this was a pre-election determination by Mississippi's judiciary.

¶46. The issue that the *Measure 20* Court did not reach was the substantive challenge to the measure, specifically, whether the circuit court had exceeded its authority in setting it aside because it was an attempted prohibition of rights guaranteed to citizens under our Bill of Rights. In fact, the Court explicitly declined to do so, citing *Power v. Ratliff*, 72 So. 864 (1916), for the premise that neither this Court nor "any other court" may review proposed initiatives "for their wisdom and merit," because that is solely within the discretion of the voters. *Measure 20*, 774 So. 2d 401.

¶47. The majority finds it necessary to overrule *Measure 20* "to the extent that [it] is read to provide pre-election substantive review of proposed constitutional amendments" and complains of its glaring lack of authority in holding that the circuit court may decide a substantive challenge pre-election. *Measure 20* explicitly holds that initiatives are "subject to review of form," not substance. *Id*. at 402. Contrary to the majority's reading of *Measure 20*, the Court in that case did not equate content with substance, but rather referred to content merely to mean the plain language, i.e., text, of the initiative and whether that text comported with the applicable statutory requirements and the requirements of Section 273 of the state constitution. Given that the Court in *Measure 20* was in no way deciding the case on the underlying merits of whether prohibiting gambling was unconstitutional under the Bill of Rights, the Court's holding did not hinge on the substantive issue.

¶48. The same task is before us today: to decide whether the text of Measure 26 meets the minimal constitutional requirements of Section 273. None of the parties has argued that

29

Measure 26 runs afoul of the rights guaranteed the citizens by our Bill of Rights. Whether Measure 26 limits or expands the rights enumerated within Mississippi's Bill of Rights is of no moment, for this Court is asked only whether the plain language of Measure 26 makes the initiative a "proposal, modification or repeal" of any portion of the Bill of Rights as prohibited by Section 273(5)(a).

*This Court has subject matter jurisdiction over today's case.*

¶49. In the present case, just as in **Measure 20,** jurisdiction was proper in the circuit court. Article 6, Section 156, of the state constitution is the source from which the circuit court derives its authority to hear certain civil matters. Where proper jurisdiction is present in the court below, this Court has "such jurisdiction as properly belongs to a court of appeals." Miss. Const. art. 6, § 146. Accordingly, proper jurisdiction of the direct appeal of this case lies with this Court. Hence, this matter was ripe for review upon final judgment of the trial court.

*Measure 26 does not meet the minimum constitutional requirements.*

¶50. In order to initiate a proposed amendment to the constitution of this state, any qualified elector may do so by filing with the Secretary of State a typewritten copy of the proposed initiative, as well as an affidavit stating that the sponsor of the initiative is a qualified elector. Miss. Code Ann. § 23-17-1(2) (Rev. 2007). The text of the proposed initiative must identify "the amount and source of revenue required to implement the initiative," any programs requiring a reduction or reallocation of funding in order to implement the initiative, and "all information required under Section 273, Mississippi Constitution of 1890." Miss. Code Ann. § 23-17-1(3),(4) (Rev. 2007). One such requirement under Section 273(5)(a) is that the initiative must not include language that holds the amendment out to be a "proposal,

30

modification or repeal" of our Bill of Rights. Miss. Const. art. 15, § 273(5)(a). Measure 26, is in fact, both a *proposal* to and a *modification* of the Bill of Rights.

¶51.   Measure 26 reads as follows:

> SECTION 1.   Article III [24] of the constitution of the state of Mississippi is hereby amended BY THE ADDITION OF A NEW SECTION to read:
>
> Section 33.   Person defined. As used in this Article III of the state constitution, "The term 'person' or 'persons' shall include every human being from the moment of fertilization, cloning, or the functional equivalent thereof."

(Capitalization original.) Thus, the text of Measure 26 purports, on its face, to be a new section of the Bill of Rights, in other words, a *proposal* concerning the Bill of Rights, explicitly prohibited by Section 273(5)(a).

¶52.   The words *person* and *persons* appear some twenty times throughout the Bill of Rights. Measure 26 seeks to modify the definition of these words. The several articles of our state constitution are numbered in Arabic numerals, not Roman numerals, as appears in SECTION 1 of Measure 26. It is clear, however, that the plain language of Measure 26 seeks to *amend* Article 3 of our state constitution, which contains our state Bill of Rights, and nothing else. To *amend* is to *modify*; these familiar English words are interchangeable. To attempt to make an *addition* to the portion of a constitution that is the Bill of Rights, and nothing but the Bill of Rights, is without question, a *proposal* to make a *modification* to a fundamental, bedrock portion of our law that the people clearly have the right to modify, but not in this manner.  The judiciary of this state has not only the authority, but the *duty*, to enjoin such an obvious

---

[24]Article 3 of the Mississippi Constitution is entitled BILL OF RIGHTS.

violation of the state constitution that every member of this state's judicial branch of government has taken a solemn oath to uphold.

¶53. *Measure 20*, 774 So. 2d at 402, stands for the premise that a pre-election challenge to a proposed amendment may properly be had in circuit court to determine whether the amendment meets minimum statutory and constitutional requirements. Today's case should be decided under this established premise, and *Measure 20*'s interpretation of Section 273 should be upheld for the sake of constitutional *stare decisis*, not further confused with an erroneous interpretation. In deciding this issue, I am reminded of the wise analysis of Justice Robertson, writing for the Court in *Moore,* 578 So. 2d at 638:

> Constitutional *stare decisis* bears a separate dimension. It addresses the legitimacy of process more than immediate results or specific interpretations, about which judges inevitably will differ. At stake is public confidence in our disinterestedness. Expositions of the Constitution should be grounded in law and not the proclivities of individuals, nor the politics of the moment. Legal interpretation does and should change with the times and the frequent agent of that change is a change in judicial personnel, but it is accepted that public confidence in the law requires substantial stability in the face of such changes. We must be careful lest our interpretations reflect the idiosyncratic views of judges rather than the shared and enduring values of the people embodied in the Constitution we are sworn to serve.

The people of Mississippi have reserved for themselves in Section 273(5)(a) the constitutional guarantee that their Bill of Rights *shall not* be added to, modified, or repealed by the initiative process. This Court is sworn to uphold the will of the people as voiced in their constitution, not sacrifice it for the will of the proponents or opponents of any particular measure.

¶54. For these reasons, I find that Measure 26 is invalid on its face, because it is both a proposed addition to and a modification of the Bill of Rights. Therefore, I would reverse the

32

circuit court's denial of Plaintiffs' motion for judgment on the pleadings, and enjoin the placement of Measure 26 on the ballot.

**KING, J., JOINS THIS OPINION.**